CHAMBERS, Circuit Judge:
In late 1982, appellee Advance Ross sold its stock in AMI Industries, Inc., a wholly-owned subsidiary, to appellant Algeran, Inc., taking promissory notes for a portion of the sales price, with the AMI stock pledged as security. Algeran thereafter filed this action in district court claiming damages relating to the stock purchase. Advance Ross counterclaimed.
Discovery was undertaken and by December, 1983, Advance Ross took steps which were meant to protect it from what it asserted was Algeran’s siphoning of AMI assets to its own use, in the face of Alger-an’s questionable financial position. In January, 1984, Advance Ross gave notice of intent to sell the pledged stock at a public foreclosure sale to be held at 8:00 a.m. on Monday, January 30. Algeran sought a temporary restraining order but at the hearing on January 27 its motion was denied. On Sunday, January 29, counsel for Algeran telephoned a U.S. magistrate requesting a one-day stay of the foreclosure sale to permit it to appeal the denial of the TRO. The magistrate consulted the district judge who consented to such a stay for the purpose of the appeal, but also instructed that all counsel meet with him the following morning to clarify the situation and the order.
On Monday morning, January 30, the attorneys appeared and counsel for Alger-an submitted a proposed order. Advance Ross, which had delayed the foreclosure sale pursuant to the oral order, suggested that Algeran wished the delay in order to file in bankruptcy. When questioned by the district judge, Algeran’s attorneys responded that “the 24 hours is not being utilized for that purpose” and that Algeran might have filed in bankruptcy earlier; it merely needed time to “pursue other avenues” in order to “avoid the stigma of bankruptcy.” When pressed, however, counsel refused to give assurance that the 24-hour stay would not be used to file a bankruptcy petition. The district judge then responded that the “sale should go forward” and he would not sign the proposed order for stay. At this point, counsel for Algeran requested that the matter be put to the end of the morning calendar to permit him to obtain instructions from his client. The district judge acquiesced.
A half hour or so later, counsel for Algeran returned and announced to the court that Algeran’s Chapter XI petition had been filed. The stay imposed by 11 U.S.C. § 362(a) (hereafter “the automatic stay”) was thus activated, precluding, among other things, the Advance Ross foreclosure sale.
Advance Ross proceeded with the foreclosure sale. The exact time of doing so is unclear and it remains unresolved whether the sale came before or after the bankruptcy filing. In any event, Advance Ross purchased the AMI stock at the sale and then promptly petitioned the district court to lift the automatic stay as to the AMI stock and to validate the foreclosure sale. Advance Ross also petitioned for sanctions against Algeran and its trial counsel.
The district judge later annulled the stay and validated the sale, finding cause to do *1423 so under 11 U.S.C. § 362(d)(1). He also imposed sanctions of $5,000 against Alger-an and its trial counsel, jointly, finding “bad faith” in violation of local rules of court, in their conduct in filing the petition. He granted a temporary stay until March 2 to permit Algeran to apply to this court for a stay pending appeal, but on March 2 counsel for Algeran notified the district court that no stay pending appeal would be sought, and that Algeran was undertaking “an orderly transition of the management and control of AMI” for the good of that company. The AMI directors (Algeran principals) simultaneously submitted their resignations and new directors (Advance Ross principals) replaced them, assuming control over the management of AMI. A few weeks later AMI filed in bankruptcy.[1]
Algeran appeals the orders of the district court lifting the automatic stay and validating the foreclosure sale of the AMI stock. Algeran’s trial attorneys appeal the order for sanctions.
Looking to the Algeran appeal first, we need to ask if we have jurisdiction. We conclude that we do not. What, if any, merit there might be to the Algeran appeal, the power of this court is “limited to the adjudication of actual cases and live controversies” and we cannot “give opinions about abstract propositions.” Luckie v. E.P.A., 752 F.2d 454 (9th Cir.1985).
Basic principles of mootness preclude our claiming jurisdiction when failure to obtain a stay pending appeal has “permitted such a comprehensive change in circumstances as to render it inequitable for this court to consider the merits of the appeal.” In re Roberts Farms, Inc., 652 F.2d 793, 798 (9th Cir.1981). It is clear that great changes in the status quo occurred after the district court rendered the orders appealed from. Those changes were ones which Algeran precipitated by the resignation of its principals as directors of AMI, and by the ensuing bankruptcy of AMI, the stock of which was the subject of the foreclosure sale that Algeran would have us declare invalid. These changes in circumstances make it impossible for us to fashion a remedy that would restore the interested parties to their former position. In re Cook, 730 F.2d 1324 (9th Cir.1984); Valley Nat. Bank of Arizona v. Trustee for Westgate-California Corp., 609 F.2d 1274, 1283 (9th Cir.1979).
In the alternative, we rely on the consistent policy in recent bankruptcy law of assuring finality of judgments relating to the automatic stay. Former Rule 805 of the Rules of Bankruptcy Procedure[2] concluded with language, added in 1976, stating:
Unless an order approving a sale of property ... is stayed pending appeal, the sale of a good faith purchaser ... shall not be affected by the reversal or modification to such order on appeal, whether or not the purchaser ... knows of the pendency of the appeal.
We consistently held, in automatic stay cases arising under former Rule 805, that failure to obtain a stay pending appeal required the dismissal of the appeals for mootness. See, e.g., In re Charlton, 708 F.2d 1449, 1454 (9th Cir.1983); In re Royal Properties, Inc., 621 F.2d 984, 986-87 (9th Cir.1980). The Algeran bankruptcy case arises under the Bankruptcy Act of 1978, and also under the new Bankruptcy Rules which went into effect on August 1, 1983. Rule 8005 of the new rules is derived in part from former Rule 805, but it does not contain the language of the 1976 amendment to Rule 805. The Advisory Committee note instead refers us to Section 363(m) of the Bankruptcy Act, 11 U.S.C. § 363(m), which states:
The reversal or modification on appeal of an authorization under subsection (b) or (c) [relating to trustee’s sales, etc.] of this section of a sale or lease of property *1424 does not affect the validity of a sale .or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.
The requirement of a stay pending appeal, under pain of the appeal being dismissed as moot, is thus carried over into the present Bankruptcy Act, but the wording of Section 363(m) is such that reference is made only to conveyances by trustees. We agree with the Eleventh Circuit, however, that the omission from Section 363(m) of the language of the 1976 amendment of former Rule 805 does not indicate an intent that a conveyance by someone other than a trustee is now outside the general rule of mootness when a stay pending appeal has not been obtained. See In re Sewanee Land, Coal & Cattle, Inc., 735 F.2d 1294, 1296 (11th Cir.1984). The rule that failure to obtain a stay pending appeal renders the issue moot did not originate in the Bankruptcy Rules. Rather, it is a judicial doctrine which developed from the general rule that the occurrence of events which prevent an appellate court from granting effective relief renders an appeal moot, and the particular need for finality in orders regarding stays in bankruptcy. See In re Combined Metals Reduction Co., 557 F.2d 179, 187-89 (9th Cir.1977) (applying this doctrine before the effective date of 1976 amendment to former Rule 805). The amendment thus was merely declaratory of the law as it had existed for some time. See In re Roberts Farms, Inc., 652 F.2d at 796; In re Sewanee Land, Coal & Cattle, Inc., 735 F.2d at 1296; In re Abingdon Realty Corp., 530 F.2d 588, 590 (4th Cir. 1976).
In the revision of the Bankruptcy Code and Rules, former Rule 805 was fragmented, and the mootness rule was incorporated into Section 363(m), which deals only with conveyances by trustees. Thus the 1976 amendment did not in its entirety survive the Code revision. However, in view of the fact that the mootness rule was judicially established before the 1976 amendment, and that the policies on which it is based are not particular to conveyances by trustees as opposed to other parties, we hold that the omission of the 1976 amendment from the new Code and Rules does not abrogate the judicial mootness rule.
Our conclusion is supported by new Bankruptcy Rule 7062. Rule 7062 states that Fed.R.Civ.P. 62(a), which provides for an automatic ten day stay from judgments, is applicable in bankruptcy proceedings but that orders “granting relief from an automatic stay provided in § 362” shall be an exception to Rule 62. This explicit exception, again indicating the long-standing bankruptcy law favoring finality of judgments as to the automatic stay, applies across the board; it is not restricted to conveyances by trustees. Finally, we note that the fact that the purchaser is a party to this appeal does not change the applicability of the mootness rule. See In re Exennium, Inc., 715 F.2d 1401, 1404 (9th Cir.1983); accord In re Sewanee Land, Coal & Cattle, Inc., 735 F.2d at 1296.
Algeran contends that Advance Ross cannot claim the status of a good faith purchaser, that it thus has unclean hands, and that the district judge abused his discretion or committed error in lifting the stay and validating the sale. First, we do not accept Algeran’s argument that the foreclosure sale itself constituted “unclean hands” on this record, whether it occurred after the bankruptcy filing or before it. Immediately after the sale, Advance Ross took steps to clarify the procedural status of the sale by petitioning for an order lifting the stay and validating the sale. The district judge, the person closest to the situation, granted the petition, lifted the stay as to the AMI shares, and specifically validated the sale of January 30. In the circumstances of this case, looking at the events of January 27 through January 30, as reflected in this record, we find no unclean hands. Moreover, we face the same problem of mootness, discussed above, given Algeran's deliberate alteration of the status quo, with the resignation of its AMI *1425 directors, shortly after the judge’s order was rendered.
Algeran’s position that an automatic stay cannot be lifted so as to validate a sale made while the stay was in force, is without merit. Section 362(d) of Title 11 empowers the court to grant relief from the automatic stay by “terminating, annulling, modifying, or conditioning it.” The district judge annulled the automatic stay as to the sale of AMI shares, as he was entitled to do under the statute and the facts of this case. With the automatic stay annulled, the sale that occurred cannot be said to be invalid. We find no reason or authority (and Algeran has produced nothing persuasive on this issue) prohibiting the nunc pro tunc effect of the order of annulment.
Moving to the consolidated appeal of the Algeran trial attorneys we must ask, once again, if we have jurisdiction. And once again, we conclude that we do not. Their appeal from the sanctions order is an interlocutory one as the civil matter has not come to final judgment. Ordinarily, attorneys are permitted (as nonparties) to take an immediate appeal from sanctions orders. Reygo Pacific Corp. v. Johnston Pump Co., 680 F.2d 647, 648 (9th Cir.1982). Parties, however, must await final judgment in order to appeal from such orders. Johnny Pflocks, Inc. v. Firestone Tire & Rubber Co., 634 F.2d 1215, 1216 (9th Cir. 1980). Where, as here, the sanctions are imposed against both client and counsel, jointly, there is such a “congruence of interest” that the attorneys must await final judgment in order to appeal, and this is true even though they no longer represent the client. Kordich v. Marine Clerks Ass’n., 715 F.2d 1392, 1393 (9th Cir.1983).
The Algeran appeal (No. 84-5773) is moot and the attorneys’ appeal (No. 84-5761) is from other than a final judgment. We dismiss both appeals for lack of appellate jurisdiction.[3]

. Advance Ross asks that we take judicial notice of the telex sent by the AMI directors (Algeran's principals) resigning on March 2 and also of the AMI Industries, Inc., Statement of Financial Affairs of Debtor Engaged in Business. We grant the motion as to the latter document, which is of record in the AMI bankruptcy proceeding, and which supports Advance Ross’ statement that the Algeran principals did indeed resign soon after the March 2 district court hearing.

. This rule was repealed when the new Bankruptcy Rules went into effect on August 1, 1983. This case arises under the new rules.

. The civil proceeding between Algeran and Advance Ross is still pending in district court. This opinion is not intended to express any view as to the merits of any of the parties’ positions in that lawsuit. Similarly, this opinion is not intended, in any respect, to express any view as to the merits of the attorneys’ appeal from the sanctions order.