In re G. Gregory WILLIAMS, Debtor.

G. Gregory Williams, Appellant,

v.

Eli Levi; Peter Gordon, Esq.; Aaron Bovshow, Esq.; Franklin Towers Homeowners Association, Inc., Appellees.

BAP No. CC–04–1033–BKPA.

Bankruptcy No. LA 03–35597–SB.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 17, 2004.

Filed March 25, 2005.

G. Gregory Williams, Los Angeles, CA, Pro se Appellant.

Christie Gaumer, Law Offices of Christie Gaumer, Los Angeles, CA, for Eli Levi.

Before: BRANDT, KLEIN, and PAPPAS,[1] Bankruptcy Judges.

## OPINION

BRANDT, Bankruptcy Judge.

This automatic stay appeal involves the interplay between the second and third of three chapter 13[2] bankruptcy cases filed by the appellant debtor within the space of thirteen months.

When the second case was filed, the appellant debtor had a possessory interest, and an equitable ownership interest pursuant to an unrecorded deed, in a condominium unit titled in the name of a third person. Two days after the second case was filed, the appellee homeowners association, with knowledge of that bankruptcy case and of appellant's claims regarding the property, foreclosed its lien on the condominium without first obtaining relief from the automatic stay.

In the third case—which followed dismissal of the second case and was assigned to the same judge—the debtor sought to recover the premises and stay-violation damages on account of the putative stay violation that occurred in the second case. The bankruptcy court, without reopening the second case, entered an order in the third case retroactively annulling the stay in the second case. The court did not address the questions of whether the stay had been violated or appellant should recover stay-violation damages.

We AFFIRM the order annulling the stay but REMAND, without suggesting any view as to the merits, so that the bankruptcy court may decide whether stay-violation damages may be appropriate notwithstanding the annulment of the stay. In addition, we DISMISS AS MOOT the debtor's appeal from the bankruptcy court's denial of his motion to stay the related state-court eviction action.

## I. FACTS

Debtor, G. Gregory Williams, who describes himself as a "retired attorney," lived with his fiancee, P. Toi Polpantu, at 7250 Franklin Avenue, Unit 207, Los Angeles, California, a condominium unit. Williams purchased the condo in 1995. By deed recorded 21 April 1999, Williams transferred title to Polpantu. By another deed, also dated 21 April 1999, but not recorded until 4 April 2003, Polpantu quitclaimed title back to Williams.

When approximately $11,000 in dues went unpaid, appellee Franklin Towers Homeowners Association, Inc.,[3] gave notice of its intent to conduct a non-judicial foreclosure sale of the condo on 3 April 2003.

On 1 April 2003 Williams filed a chapter 13 bankruptcy petition, his second in recent times.[4] It was a so-called "face

---

1. Hon. Jim D. Pappas, Bankruptcy Judge for the District of Idaho, sitting by designation.

2. Absent contrary indication, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330; all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "FRCP" references are to the Federal Rules of Civil Procedure.

3. Of the appellees, only Eli Levi briefed or argued.

4. Case No. LA 03–18775–SB. Our review of the bankruptcy court's records shows Williams had filed a prior bankruptcy in the same district, No. LA 02–31997–KM, on 5 August 2002. It was dismissed and does not figure in this appeal.

sheet" or "skeleton" filing of a petition without accompanying schedules, statement of financial affairs, or a proposed plan. Nothing filed on 1 April 2003 indicated that Williams claimed an interest in the condo.

The scheduled non-judicial sale was conducted on 3 April 2003, and appellee Eli Levi[5] was the successful purchaser in competitive bidding with his bid of $215,000. Although Levi was not a creditor, he does not contest that Williams had given him notice of the filing of the chapter 13 petition before the sale occurred.

Williams recorded the four year old Polpantu to Williams quitclaim deed on 4 April 2003, after having filed his petition, and after the foreclosure sale.

On 8 April 2003, Levi filed and served on Polpantu a statutory notice to quit. Although Williams did not avail himself of his right under California law to file a notice of right to claim possession of the premises, Levi does not dispute that he knew Williams was living there. A foreclosure trustee's deed in favor of Levi was recorded on 11 April 2003. On 22 April Levi filed an unlawful detainer action against Polpantu in state court. *Levi v. Polpantu,* Los Angeles County Superior Court, Case 03U408.

A series of legal maneuvers in the state and bankruptcy courts followed. There was a state court unlawful detainer action that Williams attempted to remove to federal court, but which resulted in judgment for Levi after the state court reasoned that the attempt to remove was unsuccessful. An eviction was scheduled. The state court apparently rejected an attempt by Williams to enjoin the eviction. Levi apparently took possession of the premises

for about a week until the bankruptcy court issued an order that enabled Williams to return to the premises.

In August 2003, Williams' second bankruptcy case was dismissed for his failure to comply with chapter 13 requirements, thus terminating the automatic stay. After this dismissal, Levi filed an action in state court (Los Angeles County Superior Court No. BA–311463), seeking to cancel Williams' deed, quiet title, and obtain damages.

On 1 October 2003, Williams filed his third bankruptcy case, again under chapter 13, No. LA03–35597SB, which was assigned to the same judge who presided over his second bankruptcy case. Two days later, Williams asked the bankruptcy court to stay the eviction.

On 24 October Levi moved for relief from stay in the third bankruptcy case "to obtain possession of the residential or nonresidential premises at 7250 Franklin Avenue, No. 207, Los Angeles . . . ." Levi argued that the automatic stay did not affect him because the premises did not belong to Williams and were not property of the estate in either the second or third bankruptcy cases. He also argued that, even if the automatic stay was in effect, it should be annulled to permit Levi to continue his unlawful detainer action in state court.

Williams opposed the motion, arguing that Levi violated the automatic stay by purchasing the premises at the foreclosure sale after receiving notice of his second bankruptcy filing and by commencing the eviction action. Williams sought monetary stay-violation damages but did not ask the bankruptcy court to rule that either the

---

5. Levi owns other units in the condo building, but is allegedly not an Association board member and has no management authority. Williams implies some wrongdoing or collu-

sion occurred between Levi and a broker, Roland Watkins, but the bankruptcy court made no findings on this point, and we need not address it.

sale or the unlawful detainer action were void.

After a number of continuances, the bankruptcy court heard both motions on 23 December. Although concluding the hearing by indicating he intended to reassign the matter to another judge, on 31 December 2003 the judge issued a written order annulling the stay and denying Williams' motion to stop the eviction, stating in part:

> Notwithstanding that the foreclosure sale may be void under Ninth Circuit law, the debtor has taken no action, either in this case or in the prior case, to set aside the sale. Levi now moves for relief from stay to proceed with eviction of the debtor from the condominium.
>
> Because the debtor has not taken any such action, notwithstanding that the foreclosure occurred almost eight months ago, the court finds that the debtor has unduly delayed and that relief from stay should be granted and the purchaser should not be further inhibited from obtaining possession of the property.
>
> ACCORDINGLY, IT IS ORDERED that the relief from stay motion is granted retroactively to April 1, 2003 and the motion to stay eviction is denied.[6]

Williams timely appealed, and moved for a stay pending appeal, which we denied.

Williams' third bankruptcy case was dismissed on 11 February 2004. Williams responded (twice) to our clerk's order suggesting that the dismissal of the bankruptcy case might have mooted the appeal. Levi replied with a motion to dismiss the appeal. Our order re mootness, entered 13 July 2004, limited review in this appeal to the order annulling the stay,[7] noting that it was not moot because Williams sought damages for a violation of the stay.

## II. ISSUES

A. Whether the denial of Williams' motion to stay the eviction action is moot;

B. Whether the bankruptcy court abused its discretion in annulling the stay; and

C. Whether Williams may be entitled to damages under § 362(h).

## III. JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334 and § 157(a), (b)(1), and (b)(2)(G). We do under 28 U.S.C. § 158(c).

## IV. STANDARDS OF REVIEW

■ We review an order to annul the stay for an abuse of discretion. *In re Nat'l Envtl. Waste Corp.*, 129 F.3d 1052, 1054 (9th Cir.1997).

■ We may consider any issue evident on the record, and may affirm on any basis supported by the record, even where the issue was not expressly considered by the bankruptcy court. *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir.1989).

---

**6.** Although the parties argued the issues, the bankruptcy court did not address the priority, validity, or effect of the Polpantu to Williams deed, or of the foreclosure trustee's deed, under state law. Those issues are not before us.

**7.** In his responses to our clerk's order, Williams also asserted that other orders entered by the bankruptcy court after the one attached to his notice of appeal were also on appeal. Although Williams' notice of appeal listed three orders supposedly entered that day, only one is disclosed in the bankruptcy court's docket, and that is the order attached to the notice of appeal.

We do not reverse for errors not affecting substantial rights of the parties, and as noted, may affirm for any reason supported by the record. 28 U.S.C. § 2111; FRCP 61, *incorporated by* Rule 9005; *In re Maximus Computers, Inc.,* 278 B.R. 189, 194 (9th Cir. BAP 2002), *citing Dittman v. California,* 191 F.3d 1020, 1027 n. 3 (9th Cir.1999).

## V. DISCUSSION

### A. Jurisdiction

"The doctrine of mootness precludes federal court decision of questions that cannot affect the rights of litigants in the case before them .... [A]n actual controversy must be extant at all stages of review .... Whenever an action loses its character as a present live controversy during the course of litigation, federal courts are required to dismiss the action as moot." *In re Di Giorgio,* 134 F.3d 971, 974 (9th Cir.1998) (citations and quotation marks omitted).

The bankruptcy court's order denied Williams' motion to stay the state court eviction action. Williams indicates in his opening brief that, after the dismissal of his third chapter 13 case, Levi proceeded with the unlawful detainer action, obtained possession of the property, and commenced a quiet title action in state court. Because there was no automatic stay then in effect, Levi was free to take such actions. *See* § 362(c) (providing that the automatic stay terminates upon dismissal of the bankruptcy case).

We presume, but cannot tell from the record, that Levi obtained a new writ of eviction, rather than relying upon the writ that the bankruptcy court stayed in its 25 June 2003 order. If not, we express no opinion about the continued efficacy of that order after dismissal of both the chapter 13 case in which it was issued and the case

from which the order on appeal arose, because our conclusion would be of no moment. Levi's freedom to commence an entirely new unlawful detainer action to evict Williams after dismissal of the third bankruptcy case moots this part of the appeal. We could afford no effective relief to Williams with respect to possession of the condo; this aspect of the appeal is moot and must therefore be dismissed.

But, as our motions panel noted, although Williams' third bankruptcy case has been dismissed, his request for monetary damages for Levi's alleged willful violation of the automatic stay is not moot. *In re Davis,* 177 B.R. 907, 911 (9th Cir. BAP 1995).

### B. The Record and Appellee's Motion to Supplement

It is not clear whether the parties followed the designation of record process set forth in Rule 8006. Levi's brief as originally filed included a request for judicial notice, noting that Williams had omitted from the excerpts of record essentially all of his pleadings filed after Levi's motion for relief from stay. We did not grant Williams' motion to strike Levi's brief, but instead ordered Levi to file a motion to supplement the record, and allowed Williams additional time to file his reply brief. Levi filed a motion to supplement the record, which we now grant.

### C. The Merits

#### 1. *Entry of the order for relief from stay in the dismissed case.*

Williams contends the bankruptcy court had no jurisdiction to enter an order in the third bankruptcy case that, in effect, retroactively annulled the automatic stay that arose in the dismissed second bankruptcy case. This is not so. In considering Levi's motion to annul the stay, the

bankruptcy court was properly interpreting and effectuating the automatic stay, within its ancillary jurisdiction from the second case, which survived dismissal. *In re Aheong,* 276 B.R. 233, 239–40 (9th Cir. BAP 2002) (citing *In re Taylor,* 884 F.2d 478, 481 (9th Cir.1989)). *See also In re Carraher,* 971 F.2d 327, 328 (9th Cir.1992); *In re Giddens,* 298 B.R. 329, 337 (Bankr. N.D.Ill.2003).

Moreover, the provisions of the Bankruptcy Code authorize the relief granted in this case. Upon the filing of a bankruptcy petition, § 362(a)(1) provides:

> (a) ... a petition filed under section 301 ... operates as a stay, applicable to all entities, of—

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title

> ....

*See also Celotex Corp. v. Edwards,* 514 U.S. 300, 302, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (automatic stay prevents commencement of any act to possess property of the debtor). But § 362(d) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

> (2) with respect to a stay or an act against property under subsection (a) of this section, if—

> (A) the debtor does not have equity in such property; and

> (B) such property is not necessary to an effective reorganization ....

As can be seen, § 362(d) authorizes the bankruptcy court to enter an order annulling the stay "provided under subsection (a)" of § 362. In turn, subsection (a) refers to the stay that arises upon the filing of "a petition." Nothing in the language of § 362(d) restricts the reach of a stay relief order to the particular bankruptcy case in which that relief is sought. The bankruptcy court may therefore properly grant relief from a stay that arose under subsection (a) in a prior, different bankruptcy case before the same court. (We are not here presented with bankruptcy cases before different judges or in different districts, as in *In re Miller,* 397 F.3d 726 (9th Cir.2005)).

The bankruptcy court's approach is also consistent with traditional rules pertaining to obtaining relief from an order entered in a prior, different action:

> § 80. Relief in the Course of a Subsequent Action

> When a judgment is relied upon as the basis of a claim or defense in a subsequent action, relief from the judgment may be obtained by appropriate pleading and proof in that action if other means of obtaining relief from the judgment are unavailable to the applicant or the convenient administration of justice would be served by determining the question of relief in the course of the subsequent action.

*Restatement (Second) of Judgments,* § 80 (1982).

Since the same bankruptcy judge presided over both cases, the convenient administration of justice was served by the pro-

cedure followed here. Although Williams' second bankruptcy case could have been reopened and the order issued with that caption, any error could be corrected under FRCP 60(a) or (b) (which allows relief by independent action), applicable via Rule 9024, and is, in any event, harmless.

2. *Applicability of the automatic stay.*

 The legal and equitable interests of a debtor at the start of a case are determined according to state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). On the petition date, Williams had no recorded interest in the Property. But he lived in the condo, and his possessory interest was property of the bankruptcy estate under § 541(a) and § 1306. *In re Butler,* 271 B.R. 867, 876–77 (Bankr.C.D.Cal.2002) (a debtor-tenant's mere physical possession of apartment premises after writ of possession had issued in favor of landlord in unlawful detainer action is an equitable interest in property, protected by automatic stay). *See also In re Di Giorgio,* 200 B.R. 664 (C.D.Cal.1996), *judgment vacated,* 134 F.3d 971 (9th Cir.1998). Likewise, both Williams' possessory interest and his equitable interest in the Property under the unrecorded (as of the petition date in the second bankruptcy case) Polpantu to Williams deed were property of the estate.

 So some precision about what conduct might implicate the stay is in order. As noted, Williams was not in title to the condo when he filed his petition, so record ownership of the Property was not protected by the stay. And, under California law, nonjudicial foreclosure affects only legal title, and not any possessory right. *In re Torrez,* 132 B.R. 924, 939 (Bankr. E.D.Cal.1991).

Nor was Levi's purchase at the foreclosure sale, without more, an obvious violation of the stay. The Association was act-ing to enforce an obligation, and against the property, but Levi was not. Even if the sale were unambiguously of estate property, and void, *In re Schwartz,* 954 F.2d 569, 571 (9th Cir.1992), it would take an adversary proceeding to establish that as against a third party purchaser. Rule 7001(2). While Polpantu's interest presumably was protected by the co-debtor stay of § 1301 (assuming Williams, not in title, had an obligation to pay dues), she is not a party to this appeal, and Williams has no apparent standing to appeal on her behalf.

Williams' wide-ranging arguments are founded on the premise that the foreclosure sale was void, as the bankruptcy court indicated might be the case. But since the property foreclosed upon—the record interest of Polpantu—was not property of the estate or Williams on his petition date, that is not self-evident, and, as indicated above, would require an adversary proceeding to establish, either as a matter of state law or under § 549. Among the issues to be decided in such an action would be the priority between the foreclosure trustee's deed and the Polpantu to Williams deed: presumably Levi will argue that the trustee's deed relates back to the sale date under California Civil Code § 2924(c), and that date is prior to the recording of Williams' deed.

But Williams has never asked the bankruptcy court to declare the foreclosure sale or eviction action void, and we need not decide those possible issues. Instead, in this appeal, we focus on whether the bankruptcy court's decision retroactively to annul the automatic stay was an abuse of discretion.

3. *Annulment of the automatic stay.*

 Postpetition actions taken in violation of the automatic stay, even those undertaken by an actor with knowledge of

the bankruptcy filing, may be validated by annulment of the stay. In *Algeran, Inc. v. Advance Ross Corp.*, 759 F.2d 1421, 1425 (9th Cir.1985), the Ninth Circuit held:

> Algeran's position that an automatic stay cannot be lifted so as to validate a [postpetition foreclosure] sale made while the stay was in force, is without merit. Section 362(d) of Title 11 empowers the court to grant relief from the automatic stay .... The district judge annulled the automatic stay as to the sale of AMI shares, as he was entitled to do under the statute and the facts of this case. With the automatic stay annulled, the sale that occurred cannot be said to be invalid.

While Levi did not specifically request annulment of the stay in Williams' second bankruptcy case, the bankruptcy court assumed the request was to annul the stay as of 1 April, when the events that are at the heart of this controversy unfolded. The bankruptcy court did not specify which subsection of § 362(d) authorized annulment, but its reasoning fits into the broad category of "cause" under § 362(d)(1), as in *Algeran.*

▆▆▆ Whether to grant retroactive relief from the automatic stay under § 362(d) is a decision committed to the discretion of the bankruptcy court. *Nat'l Envtl. Waste,* 129 F.3d at 1054. In *Nat'l Envtl. Waste,* the Ninth Circuit adopted a balancing of equities approach for analyzing a request for retroactive stay relief, and identified two factors to be considered by the bankruptcy court: (1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor. *Id.* at 1055–56.

▆▆▆ In *In re Fjeldsted,* 293 B.R. 12, 24–25 (9th Cir. BAP 2003), following *Nat'l*

*Envtl. Waste,* we approved consideration of additional factors by the bankruptcy court, including: the number of filings; the extent of any prejudice, including to a bona fide purchaser; the debtor's overall good faith; the debtor's compliance with the Code; how quickly the creditor moved for annulment; and how quickly the debtor moved to set aside the sale. But because a mechanistic application of "factors" is inappropriate in making the determination of whether to annul the stay, in *Fjeldsted,* we observed that:

> Mindful that such lists [of factors] are capable of being misconstrued as inviting arithmetic reasoning, we emphasize that these items are merely a framework for analysis and not a scorecard. **In any given case, one factor may so outweigh the others as to be dispositive.**

293 B.R. at 25 (emphasis added).

▆▆▆ It is difficult to review the decision here because the bankruptcy court made no detailed findings of fact and conclusions of law. Rule 9014 incorporates the provisions of Rule 7052 and FRCP 52, requiring findings and conclusions in any contested matter, which are essential to appellate review. *In re Harris,* 279 B.R. 254, 260 (9th Cir. BAP 2002) (findings required in contested matters involving disputed issues of fact); *Halas v. Platek,* 239 B.R. 784, 793 (N.D.Ill.1999).

Effective review should not depend upon the intuition of the appellate judges or their ability to divine the critical facts or trial court's reasons for its judgment. Here, while the pickings in the order are indeed slim, there is enough in its statement of undisputed facts and the legal justification for the decision to allow our review of the bankruptcy court's exercise of discretion in annulling the stay.

Recall, while Williams had filed for Chapter 13 relief three times, and through

one legal maneuver after another in both state and bankruptcy court had resisted Levi's attempts to evict him from the condo, he had never properly asked the bankruptcy court to void the foreclosure sale through which Levi asserted title to the Property. The validity of the foreclosure sale was, and continues to be, the lynchpin to the parties' disputes. If the sale was conducted in violation of the automatic stay, it, and Levi's title, are void. *Schwartz,* 954 F.2d at 571.

And while arguments about whether the stay was in force and prohibited Levi from acquiring good title were and could be asserted in the state courts, it is for the bankruptcy court finally to resolve these questions. *In re Dunbar,* 245 F.3d 1058, 1063–64 (9th Cir.2001) (with respect to interpreting the scope of the automatic stay, federal courts have final authority); *In re Gruntz,* 202 F.3d 1074, 1087 (9th Cir.2000) ("bankruptcy courts have the ultimate authority to determine the scope of the automatic stay").

Although substantial time had passed and Williams had employed a variety of litigation tactics in his two bankruptcy cases, the bankruptcy court was apparently frustrated that the critical issue had never been presented. As a result, the bankruptcy court presumably decided the equities favored Levi. While Williams protested Levi's efforts to evict him from the Property, and asked for monetary sanctions on account of Levi's conduct, Williams had not commenced an appropriate adversary proceeding pursuant to Rule 7001 to declare the foreclosure sale[8] and subsequent actions taken by Levi void. This failure, viewed together with Williams' serial filings, his repeated re-

quests to stay the eviction action, his ill-advised attempt to "remove" that action to the bankruptcy court, and his inability to obtain confirmation of a plan in his second chapter 13 case, apparently motivated the bankruptcy court to conclude that, as between Williams and Levi, Levi should have relief.

Levi's conduct can also be criticized. Until Williams' third bankruptcy case was filed, Levi seemed unconcerned about the scope of the automatic stay, to the point of forgoing any attempts to obtain a ruling from the bankruptcy court blessing his efforts to evict Williams. To the extent that Levi's conduct constituted a willful disregard of the automatic stay that caused Williams damage, the consequences of his cavalier approach to the bankruptcy laws could subject him to serious consequences, even monetary sanctions. *See* § 362(h).

But the bankruptcy court was apparently more concerned with Williams' lack of diligence than Levi's disregard of the stay. And even were we to reach a different conclusion about the equities on this record, in deciding that Williams had engaged in unreasonable delay in failing promptly to attack the sale, the bankruptcy court correctly focused on appropriate factors under the case law: whether Williams engaged in inequitable conduct, *Nat'l Envtl. Waste,* 129 F.3d at 1055, and whether he promptly moved to have the foreclosure's validity determined, *Fjeldsted,* 293 B.R. at 25. That the bankruptcy court did not discuss its consideration of other relevant factors in its order is not fatal: as we indicated in *Fjeldsted,* one factor in the analysis may sufficiently outweigh all others and justify annulment.

8. Obviously, the Association, as the foreclosing creditor and likely the foreclosure trustee, would have been a necessary party to an action to void the foreclosure sale. Its absence from this litigation would prevent the bankruptcy court from rendering any final judgment concerning the validity of the sale in the context of Levi's or Williams' motions.

The bankruptcy court did not abuse its discretion when it annulled the stay.

### 4. *Monetary sanctions.*

Section 362(h) provides:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages.

"Willfulness" in this context requires that the actor know of the existence of the stay and that the actions taken in violation of the stay be intentional. *Eskanos & Adler, P.C. v. Leetien,* 309 F.3d 1210, 1215 (9th Cir.2002); *In re Fernandez,* 227 B.R. 174, 180 (9th Cir. BAP 1998), *aff'd,* 208 F.3d 220 (9th Cir.2000)(table).

Levi argues that Williams was required to commence an adversary proceeding to claim damages, and cites *Davis,* 177 B.R. at 911. We disagree: Rule 7001 requires an adversary proceeding when a debtor is seeking a finding of contempt; a motion is otherwise proper. *In re Zumbrun,* 88 B.R. 250, 252–53 (9th Cir. BAP 1988); *In re Forty–Five Fifty–Five, Inc.,* 111 B.R. 920, 922–23 (Bankr.D.Mont.1990).

We cannot tell from the bankruptcy court's order whether the court intended implicitly to deny relief to Levi under § 362(h). Williams' declaration addressing the prejudice he suffered from being evicted, even temporarily, from his residence during the pendency of the bankruptcy case gives rise to factual issues we are not free to resolve on appeal. *See In re Thomas,* 287 B.R. 782, 786 (9th Cir. BAP 2002) (remanding for determination of good faith, observing that an appellate court is ill-equipped to make findings on fact-intensive questions). It may be that, even though the equities favor retroactive relief from the automatic stay in favor of the actor, a debtor's request for damages under § 362(h) for the actor's willful violation of the stay before that annulment should be granted.

As we have noted, an action taken in violation of the automatic stay, though void, may be validated by the bankruptcy court through a grant of retroactive relief from the stay. *Algeran,* 759 F.2d at 1425. But case law has not yet definitively addressed whether an action taken in violation of the stay, validated by annulment after the fact, may nonetheless serve as the basis for an award of money damages if the debtor has suffered an injury. *Compare In re Edisto Res. Corp.,* 158 B.R. 954, 958–59 (Bankr.D.Del.1993) (stating that once the creditor paid the debtor's legal fees associated with defending against litigation that violated the automatic stay, cause would exist to annul the stay), *and In re Thompson,* 182 B.R. 140, 155 (Bankr. E.D.Va.1995) *aff'd,* 92 F.3d 1182 (4th Cir.1996)(table) (holding that annulling the automatic stay precludes an award of damages for a stay violation).

Thus, we remand to the bankruptcy court to decide whether Williams is entitled to § 362(h) damages in this case. While it is not before us for decision, we note that it is far from clear that annulment of the stay should preclude damages for violation of the stay before the annulment: the principle that one may be held in contempt notwithstanding the reversal of the order violated, *Worden v. Searls,* 121 U.S. 14, 7 S.Ct. 814, 30 L.Ed. 853 (1887); *U.S. v. United Mine Workers of America,* 330 U.S. 258, 294, 67 S.Ct. 677, 91 L.Ed. 884 (1947), or even its unconstitutionality, *Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967), seems an appropriate analogy.

## VI. CONCLUSION

We AFFIRM the bankruptcy court's decision to annul the automatic stay retroactively, REMAND for consideration of

Williams' claim for § 362(h) damages, and DISMISS as moot Williams' appeal from the bankruptcy court's denial of a stay of the eviction action.

KLEIN, Bankruptcy Judge, concurring and dissenting.

I join the majority with respect to affirming the annulment of the automatic stay and the denial of the stay eviction order.

While I accept in principle that a stay violation can be punished under § 362(h) in appropriate circumstances notwithstanding subsequent annulment of the stay, I construe the trial judge's decision in this constellation of facts to be an implicit rejection of stay violation damages. Even though the trial judge did not explicitly discuss imposing such a remedy notwithstanding the annulment of the stay, I regard any error as harmless in this instance and would not remand. To that extent, I DISSENT.