NOT FOR PUBLICATION

FILED

DEC 06 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-12-1276-HKiD |
| MICHAEL RENE RODARTE, | Bk. No. 09-10411-TA |
| Debtor. | |
| MICHAEL RENE RODARTE, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| ESTATES AT MONARCH COVE COMMUNITY ASSOCIATION, | |
| Appellee. | |

Argued and Submitted on November 15, 2012
at Pasadena, California

Filed - December 6, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Theodor C. Albert, Bankruptcy Judge, Presiding

Appearances:    Douglas Crowder, Esq. argued for Appellant;
                Bernard John Frimond, Esq. argued for Appellee.

Before: HOLLOWELL, KIRSCHER, and DUNN, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Michael Rene Rodarte (the Debtor) appeals an order of the bankruptcy court that granted annulment of the automatic stay. We AFFIRM.

## I. FACTS

The Debtor owns property as a tenant-in-common with his father, Manuel Rodarte (Rodarte) in Dana Point, California (the Property). The Property is part of a homeowners' association, the Estates at Monarch Cove Community Association (Monarch). A dispute arose between the Debtor, Rodarte, and Monarch with respect to maintenance of the Property. In 2003, Monarch filed a complaint in California state court against the Debtor and Rodarte to determine that a slope area on the Property was their responsibility to maintain under the terms of Monarch's Covenants, Conditions and Restrictions (CC&Rs). Monarch prevailed after a jury trial. On November 17, 2006, the state court entered a judgment against the Debtor and Rodarte (the CC&R Judgment).

The CC&R Judgment ordered the Debtor and Rodarte to repair and restore landscaping on the Property and to provide ongoing maintenance on it to comply with the CC&Rs. It provided that if the Debtor and Rodarte failed to repair or maintain the Property, Monarch was authorized to landscape and irrigate the Property to CC&R standards and to charge the cost to the Debtor and Rodarte by way of special assessment. Thereafter, in March 2007, the CC&R Judgment was amended to include an award of attorneys' fees and costs in favor of Monarch. The CC&R Judgment was recorded in the amount of $147,474.39, with 10% interest from August 22, 2006.

In 2008, pursuant to the CC&R Judgment, Monarch entered the Property to restore the landscaping. Litigation continued. In late 2008, the state court issued an order for the Debtor to appear on January 22, 2009, and show cause why the state court should not grant a motion filed by Monarch to have the Property sold.

On January 21, 2009, the Debtor filed a chapter 13[2] bankruptcy petition. On February 5, 2009, the Debtor filed his bankruptcy schedules along with a chapter 13 plan. According to the Debtor's schedules, Monarch was the Debtor's only creditor, holding the CC&R Judgment as a secured claim. The Debtor proposed to pay the CC&R Judgment in full over the term of the plan.

Monarch moved to dismiss the Debtor's bankruptcy case, asserting that the Debtor filed it in bad faith to avoid continued litigation in the state court regarding the Property. Monarch also objected to the Debtor's plan on the basis that it failed to fully provide for payment of Monarch's claims. Monarch asserted that in addition to the CC&R Judgment, it held two unsecured judgments: (1) an award of costs incurred in planting and restoring the Property in the amount of $18,544.50; and (2) an award of $6,092.50 in attorneys' fees and costs from prevailing on an appeal of the CC&R Judgment. Over Monarch's objections, an amended plan (Plan) was confirmed on February 22,

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

2010. The Plan proposed to pay Monarch's secured claim with 6% interest.

On April 9, 2010, Monarch filed a motion for relief from the automatic stay (MRS). On April 13, 2010, Monarch filed a similar motion for relief as to Rodarte as a co-debtor. Monarch requested relief from the stay in order to enforce the CC&R Judgment, including the ability to re-landscape the Property and assess "the Debtor and his father for all postpetition costs, including attorney fees incurred in connection with the landscaping" if the Debtor and Rodarte failed to perform necessary postpetition maintenance on the Property. Memorandum of Law in Support of MRS at 2. Monarch stated that it "anticipat[ed] filing a new legal action against [the Debtor and Rodarte] to restrain their ongoing postpetition violations of the [CC&Rs]," which it asserted were impacting the value of neighboring properties. Id.

The Debtor filed an opposition to the MRS on April 16, 2010. He asserted that relief should not be granted because (1) Monarch had hired three law firms and "is well-financed" and (2) Monarch "will be in a position to make the State Court litigation so expensive that the Debtor will be unable to make his plan payments." Debtor's Response to MRS at 5-6.

On May 4, 2010, the bankruptcy court held a hearing on the MRS (MRS Hearing) at which Monarch, the Debtor and his counsel attended. The bankruptcy court issued a tentative ruling prior to the MRS Hearing (MRS Tentative) stating that it intended to grant the stay relief as to any ongoing postpetition violations:

-4-

> [t]o the extent that movant needs to initiate process to enforce the ongoing covenants (as opposed to the monetary sums already embodied in the earlier judgment) there is either no stay, or if there is, the movant would be irreparably harmed . . . if this lot were allowed to remain in a non-conforming state for the balance of the term of the plan.

Tentative Ruling (May 4, 2010).

Consistent with the MRS Tentative, the bankruptcy court orally ruled at the MRS Hearing that it would deny Monarch the ability to enforce the monetary portions of the CC&R Judgment, dealt with in the Plan, but would grant stay relief to allow Monarch to liquidate prepetition attorney fees not dealt with in the Plan, and to allow Monarch to reduce the fees to judgment.[3] Additionally, the bankruptcy court granted stay relief so that Monarch could pursue its remedies under state law to enforce its CC&Rs with regard to the ongoing duties of the Debtor and Rodarte. An entry on the bankruptcy case docket dated May 4, 2010, states:

> Hearing Held . . . Motion for Relief from Stay . . . MOTION GRANTED IN PART AND DENIED IN PART; Relief is denied as to sums already dealt with in the plan. Modify co-debtor stay as to prepetition amounts not dealt with in the plan. Granted as to ongoing duties under the CC&Rs.

Although the bankruptcy court orally granted relief at the MRS Hearing on May 4, 2010, the written order denying the MRS in part and granting it in part was not actually entered until

---

[3] A transcript of the MRS Hearing was not provided in the record and is unavailable on the bankruptcy court's docket. However, we have gleaned information about the hearing from the parties' briefs, the docket, and from the bankruptcy court itself when it later recounted what took place at the MRS Hearing. See Hr'g Tr. (Apr. 18, 2012) at 12-18.

sometime later, on June 29, 2010 (the MRS Order).[4] The MRS Order was consistent with the MRS Tentative and the bankruptcy court's oral ruling.

In the meantime, acting on the oral ruling by the bankruptcy court at the MRS Hearing, Monarch filed, on June 1, 2010, a complaint in state court to enforce the CC&R Judgment (the State Court Action). The State Court Action alleged causes of action arising from the Debtor's and Rodarte's continuing violations of the CC&Rs with respect to maintenance of the Property.[5]

The Debtor and Rodarte filed an answer in the State Court Action, along with a cross complaint against Monarch. The State Court Action was thereafter fully litigated. A jury trial was held June 9-22, 2011. The jury subsequently found in favor of Monarch, finding that the Debtor and Rodarte were liable for damages in the amount of $18,520.59.[6] The verdict was reduced to a judgment entered on August 2, 2011 (the State Court Judgment). The State Court Judgment was amended on August 4, 2011, to include over $300,000 in Monarch's attorney's fees and costs incurred in the State Court Action. The final State Court

---

[4] The order granting relief from the co-debtor stay was entered June 21, 2010. Its terms are identical to the MRS Order.

[5] The record on appeal contains only the face page of the state court complaint. Our understanding of the State Court Action comes from the parties' briefs.

[6] The Debtor's declaration submitted with the Motion to Establish Violation states that the amount of damages awarded was $18,520.59. However, he has at other times stated the amount of damages awarded was only $2,700. We cannot resolve the discrepancy because neither the actual verdict nor the State Court Judgment is included in the record on appeal.

-6-

Judgment against the Debtor and Rodarte was entered in the amount of $342,702.92. The Debtor lost an appeal of the State Court Judgment.[7]

Notwithstanding the State Court Action, the dispute between the parties regarding maintenance of the Property was still not resolved. Monarch informed the Debtor that it intended to enter the Property on January 21, 2012, in order to repair the landscaping.

On January 17, 2012, the Debtor filed a Motion for Contempt for Violation of the Automatic Stay. Monarch filed an opposition and requested that the bankruptcy court retroactively annul the automatic stay under § 362(d) to June 1, 2010. The Debtor later withdrew the motion. Thereafter, on February 26, 2012,[8] the Debtor filed a Motion to Establish Violation of Automatic Stay (Motion to Establish Violation), alleging that Monarch violated the automatic stay by filing the State Court Action before the MRS Order was entered. Because the State Court Action was commenced before the MRS Order was entered, the Debtor argued that the State Court Judgment was void.

In the Motion to Establish Violation, the Debtor also asserted that Monarch was only granted relief to liquidate prepetition attorneys' fees that were not part of the Plan and to

_____

[7] According to Monarch, the Debtor did not assert that the stay violation was a basis for appeal. (The Debtor answered "no" to a question on the appeal form asking "Is there a related bankruptcy case or a court-ordered stay that affects this appeal?").

[8] An identical motion was filed on February 20, 2012, but that motion appears to be an incomplete filing.

-7-

pursue postpetition remedies to enforce the CC&Rs, but not to initiate an action to recover attorneys' fees for any postpetition litigation.

Also in the Motion to Establish Violation, the Debtor addressed various factors that courts consider when deciding whether to annul the automatic stay and asserted that those factors weighed against annulment. The Debtor requested the bankruptcy court to void the State Court Judgment.

Monarch filed an opposition on April 4, 2012, and the Debtor thereafter filed a reply. Monarch asserted that retroactive annulment of the stay was appropriate under the circumstances of the case, particularly because of the Debtor's long silence before asserting the alleged violation. In his reply, the Debtor explained that, because he was without bankruptcy counsel after the hearing on the MRS, he did not discover until sometime in October 2011, that the State Court Action was filed before the MRS Order was entered on the docket.

The bankruptcy court held a hearing on the Motion to Establish Violation on April 18, 2012. Prior to the hearing, the bankruptcy court issued a tentative ruling indicating that it would deny the Motion to Establish Violation and instead would grant annulment of the automatic stay. The bankruptcy court determined that "if there were ever a case for annulment it would be this one." Tentative Ruling (Apr. 18, 2012) at 2. It found that, in applying a balancing of the equities standard,

> the [D]ebtor's long silence is a strong additional factor weighing in favor of annulment. Other obvious factors would include that [Monarch] took the proper precaution of first seeking relief of stay, so this is not like those cases where the creditor blunders ahead

-8-

> without concern or cognizance of the stay. Further, while the court cannot condone actions taken before the relief of stay order is actually entered, the lapse is certainly more understandable here since it apparently took the court several weeks to process the order. Lastly, it is simply an affront to equity (not to mention a tremendous waste of resources) that the debtor should remain silent awaiting the results of the jury verdict, judgment and then even filing an appeal there from [sic], and then attempt to circumvent all by seeking a late declaration that the entire Superior Court action was void ab initio. This serves no legitimate bankruptcy purposes and is game playing (like heads I win, tails you lose) at its worse [sic].

Id.

At the hearing, the Debtor accused Monarch of lying to the bankruptcy court about the reasons it filed the MRS, asserting that the Debtor had no indication that Monarch intended to immediately bring a cause of action against the Debtor. The bankruptcy court addressed the Debtor's concern by reviewing the MRS Order and stating that it was clear that the reason Monarch filed the MRS was to be able to return to state court to enforce the CC&R Judgment if necessary during the term of the Plan.

On May 11, 2012, the bankruptcy court entered its order denying the Motion to Establish Violation and granting annulment of the automatic stay retroactive to June 1, 2010. The Debtor timely appealed.

## II.  JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(G).  We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUE

Whether the bankruptcy court abused its discretion in annulling the automatic stay.

## IV.  STANDARDS OF REVIEW

A bankruptcy court's decision to grant retroactive relief from the automatic stay is reviewed for an abuse of discretion.  <u>Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)</u>, 129 F.3d 1052, 1054 (9th Cir. 1997); <u>Williams v. Levi (In re Williams)</u>, 323 B.R. 691, 696 (9th Cir. BAP 2005).

A bankruptcy court abuses its discretion if it bases a decision on an incorrect legal rule, or if its application of the law was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. <u>United States v. Hinkson</u>, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc); <u>Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth)</u>, 455 B.R. 904, 914 (9th Cir. BAP 2011).

## V.  DISCUSSION

Monarch contends that it did not violate the automatic stay because the stay was dissolved after the bankruptcy court's oral ruling at the MRS Hearing.

Ordinarily, a judgment or order is effective when entered.  Rule 9021; <u>see also</u> <u>Beatty v. Traub (In re Beatty)</u>, 162 B.R. 853, 857 (9th Cir. BAP 1994), <u>overruled on other grounds by</u> <u>Marrama v. Citizens Bank of Mass.</u>, 549 U.S. 365 (2007).  Courts have, however, determined that entry of an order is not always necessary to effectuate it, particularly when the parties had notice of

-10-

the oral order. <u>Noli v. Comm'r of Internal Revenue</u>, 860 F.2d 1521, 1525 (9th Cir. 1988); <u>Am.'s Servicing Co. v. Schwartz-Tallard</u>, 438 B.R. 313, 318 (D. Nev. 2010). Here, the Debtor clearly had notice that the bankruptcy court granted Monarch stay relief to return to state court and enforce the terms of the CC&R Judgment because he had attended, with counsel, the MRS Hearing. The Debtor and Rodarte also had constructive notice of the stay relief because the oral ruling was entered on the bankruptcy case docket the same day. Therefore, it is unclear how the Debtor was prejudiced by Monarch's action taken before the MRS Order was entered as he was aware of the existence and extent of the stay relief. <u>See</u> <u>Noli</u>, 860 F.2d at 1525.

A bankruptcy court has discretion to determine whether its order is immediately effective when given orally. <u>Am.'s Servicing Co.</u>, 438 B.R. at 318; <u>see also</u> <u>Sewell v. MGF Funding, Inc. (In re Sewell)</u>, 345 B.R. 174, 179 (9th Cir. BAP 2006). In this case, the bankruptcy court acted under the well-accepted rule that orders are effective when written and docketed. <u>See</u> <u>In re Brown</u>, 290 B.R. 415, 421 (Bankr. M.D. Fla. 2003). Consequently, the bankruptcy court determined there was a violation of the automatic stay, but that annulment was appropriate under the circumstances. We address below the merits of that decision.

The bankruptcy court determined that Monarch violated the automatic stay because the MRS Order had not been entered before the State Court Action was initiated. In the Ninth Circuit, actions taken in violation of the stay are

-11-

void.  Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571-72 (9th Cir. 1992); see also Algeran, Inc. v. Advance Ross Corp., 759 F.2d 1421, 1425 (9th Cir. 1985).

However, an action taken in violation of the automatic stay may be declared valid if cause exists for retroactive annulment of the stay.  Id. at 573.  Section 362(d) empowers the bankruptcy court to annul the stay.  It provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d); In re Schwartz, 954 F.2d at 572 ("[S]ection 362(d) gives the bankruptcy court wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay.").

In analyzing whether "cause" exists to annul the stay under § 362(d)(1), the bankruptcy court is required to balance the equities of the creditor's position in comparison to that of the debtor.  In re Nat'l Envtl. Waste Corp., 129 F.3d at 1055.  Under this approach, the bankruptcy court considers (1) whether the creditor was aware of the bankruptcy petition and automatic stay, and (2) whether the debtor engaged in unreasonable or inequitable conduct.  Id.  The Bankruptcy Appellate Panel approved additional factors for consideration in Fjeldsted v. Lien (In re Fjeldsted), 293 B.R. 12, 24 (9th Cir. BAP 2003).  The Fjeldsted factors are employed to "further

-12-

examine the debtor's and creditor's good faith, the prejudice to the parties, and the judicial or practical efficacy of annulling the stay." Id. at 24-25. The factors include:

1. Number of filings;

2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;

3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;

4. The debtor's overall good faith (totality of the circumstances test)

5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;

6. Whether the debtor has complied, and is otherwise complying with the Bankruptcy Code and Rules;

7. The relative ease of restoring parties to the status quo ante;

8. The costs of annulment to debtors and creditors;

9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;

10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;

11. Whether annulment of the stay will cause irreparable injury to the debtor;

12. Whether stay relief will promote judicial economy or efficiencies.

Id. at 25.

-13-

The factors merely present a framework for analysis and "[i]n any given case, one factor may so outweigh the others as to be dispositive."  Id.; In re Williams, 323 B.R. at 700.

The record demonstrates that the bankruptcy court properly balanced the equities.  The bankruptcy court found that the Debtor's "long silence" was a strong factor weighing in favor of annulment and that it was "simply an affront to equity" that the Debtor should remain silent throughout the State Court Action and after losing an appeal of the State Court Judgment before raising the issue of a technical stay violation.  The bankruptcy court found this conduct amounted to "game playing."  Indeed, the bankruptcy court found that the Debtor "doubled down and lost" in his dispute against Monarch.  Hr'g Tr. (Apr. 18, 2012) at 14:4-5.  It found that the Debtor was essentially seeking a "pass on the last year and a half" through its Motion to Establish Violation.  Id. at 14:6-7.

The bankruptcy court weighed the Debtor's conduct against the fact that Monarch had taken the proper precaution to seek relief from the stay in the first instance.  Although it acknowledged that it took several weeks for the bankruptcy court to process the MRS Order, it "could not condone" Monarch's filing of the State Court Action.  Nevertheless, it found that there was no equitable reason for, or bankruptcy purpose served by, declaring the State Court Judgment void.  It stated:

> [A] strict mechanical view of the law would suggest that there's some substance to [declaring the State Court Judgment void as a violation of the stay]. But, anybody who stops for a minute and thinks where's the equity, where's the judicial resources, what's the bankruptcy purpose, if any, to be served, would know that it is a ridiculous argument. And it is, in fact, a ridiculous argument.

Id. at 14:9-14.

After reviewing the record, we cannot say that the bankruptcy court abused its discretion in its analysis supporting annulment of the stay. Furthermore, we find the Debtor's arguments on appeal, that the bankruptcy court made several errors in applying the balancing test, unavailing. We briefly address those arguments below.

First, the Debtor argues that the bankruptcy court made a clearly erroneous finding that the Debtor deliberately waited until after the jury trial to move to establish a violation of the automatic stay as a legal tactic. He insists that, because he did not have bankruptcy counsel to assist him, he did not know there was a violation of the stay. He argues that the bankruptcy court erred in finding his explanation for the delay was not credible.

We give findings of fact based on credibility particular deference. Rule 8013; Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575 (1985). This deference is given to inferences drawn by the bankruptcy court. Arab Monetary Fund v. Hashim (In re Hashim), 379 B.R. 912, 925 (9th Cir. BAP 2007). Additionally, where there are two permissible views of the evidence, the fact finder's choice between them is not clearly erroneous. Id.

-15-

(citing Anderson, 470 U.S. at 574 ("This applies to credibility-based findings and to findings based on inferences from other facts.")). Accordingly, the bankruptcy court's finding that the Debtor's silence was a legal tactic cannot be clearly erroneous.

The Debtor also argues that the bankruptcy court failed to give proper weight to the "extreme prejudice suffered by the Debtor." Appellant's Opening Br. at 14. He asserts that he was highly prejudiced by the stay violation because he could have avoided a costly jury trial in lieu of arbitration.[9]

As we noted above, the Debtor had actual knowledge of the bankruptcy court's decision, delivered at the MRS Hearing, to grant stay relief so that Monarch could enforce the CC&R Judgment. Indeed, he has not articulated in what way the violation of the stay actually prejudiced him. Rather, he argues only that he was prejudiced due to the outcome of the State Court Action since he lost on the merits, and more specifically, because the state court awarded over $300,000 in attorneys' fees.[10] Thus, if Monarch had waited to file the State Court Action after

_____

[9] The parties have not provided us with the controlling state statutes that provide for arbitration under these circumstances or suggested that there is a time requirement within which a party must request arbitration.

[10] At oral argument, the Debtor acknowledged that he determined the stay violation was significant only after the state court awarded over $300,000 in attorneys' fees since the actual damages award was "nominal."

-16-

entry of the MRS Order, and the Debtor again had participated fully in the litigation resulting in the same outcome, what prejudice could the Debtor demonstrate? Similarly, what prejudice could the Debtor demonstrate if he had prevailed in the State Court Action?

Furthermore, it is entirely unclear how Monarch's filing of the State Court Action before the MRS Order was docketed affected in any way the Debtor's ability to have asserted his right to arbitrate in defending against the State Court Action. The Debtor's counsel apparently conceded this point: "now that we've lost the lawsuit, we're going to do it again. And this time, we're not going to make the mistakes that caused us to lose. We get a second bite at the apple too because what was done before was void." Hr'g Tr. (Apr. 18, 2012) at 8:2-5.

The policy behind § 362 is to protect the bankruptcy estate from being depleted by creditors. It is intended to give debtors "breathing room" after filing the petition by stopping collection efforts, harassment, and foreclosure actions. It also prevents "piecemeal dismemberment" of the estate and allows the debtor time to reorganize. Lehman Commercial Paper, Inc. v. Palmdale Hills Prop., LLC (In re Palmdale Hills Prop., LLC), 423 B.R. 655, 663 (9th Cir. 2009). Here, the Debtor had the breathing room afforded by the stay to reorganize and confirm a chapter 13 plan. But as the bankruptcy court noted, simply because the Debtor is in bankruptcy, it does not give him license to disregard his ongoing duties with respect to the Property.

-17-

Hr'g Tr. (Apr. 18, 2012) at 15-18; Tentative Ruling (May 4, 2010) at 2.

The Debtor also argues that the bankruptcy court erred in annulling the stay because it allowed Monarch to have exceeded the scope of the MRS Order. The Debtor asserts that Monarch brought new causes of action against the Debtor in its State Court Action that were not contemplated by the parties. However, the record demonstrates that the MRS was filed, and the MRS was granted, so that Monarch could pursue enforcement of the CC&R Judgment as to postpetition violations. The MRS stated that Monarch anticipated filing a new state court action to enforce the CC&R Judgment, which would include recovery for monetary damages and attorneys' fees.[11]

The Debtor's final argument on appeal is that the bankruptcy court erred in annulling the automatic stay because Monarch "did not make a separately noticed motion asking for retroactive annulment, depriving Debtor of due

---

[11] At oral argument, the Debtor argued that the causes of action "may have included" prepetition damages. However, because the state court complaint is not included in the record, we have no way of evaluating that argument. Moreover, this argument was not made to the bankruptcy court, and therefore, it is waived on appeal. Campbell v. Verizon Wireless S-CA (In re Campbell), 336 B.R. 430, 434 n.6 (9th Cir. BAP 2005) (citing O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957 (9th Cir. 1989) ("The rule in this circuit is that appellate courts will not consider arguments that are not 'properly raise[d] in the trial courts.'")). The Debtor's argument to the bankruptcy court was that a request for attorneys' fees was outside the scope of the MRS Order.

-18-

process and the ability to oppose the request." Appellant's Opening Br. at 18. This argument is a non-starter. The Debtor opposed annulment in his Motion to Establish Violation. He set out the <u>Fjeldsted</u> factors and contended that they weighed against annulment. The Debtor also filed a reply brief reiterating his argument that there was no "cause" or factors that supported annulment. Additionally, the Debtor, through counsel, argued his motion to the bankruptcy court at the April 18, 2012 hearing. Consequently, there is no basis for the Debtor to assert that he was deprived of due process here.

According to the bankruptcy court, retroactive annulment of the stay was appropriate in light of the Debtor's conduct — waiting until after the State Court Action resulted in an adverse judgment before asserting that there was a stay violation, and in light of its finding that voiding the State Court Judgment would not support any bankruptcy purpose, but would instead be a waste of judicial resources. That decision was not illogical, implausible, or unsupported by the evidence in the record, and therefore, was not an abuse of discretion.

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.

-19-