**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Appellant,**

**v.**

**CENTRAL TRANSPORT, INC., George E. Gilbertson, Trustee, and Mason and Dixon Lines, Inc., Appellees.**

Civ. No. C–86–475–G.

United States District Court, M.D. North Carolina, Greensboro Division.

July 3, 1986.

J. Patrick Adams, Greensboro, N.C., Patrick A. Moran, Michael A. Nedelman, Birmingham, Mich., for Central Transport, Inc.

R. Bradford Leggett, Catherine Carruthers, Winston-Salem, N.C., for George E. Gilbertson, Trustee.

William L. Stocks, Greensboro, N.C., for Mason and Dixon Lines, Inc.

## MEMORANDUM OPINION

BULLOCK, District Judge.

On April 3, 1986, Appellant Central States, Southeast and Southwest Areas Pension Fund (hereinafter "Pension Fund") filed notice of this appeal from a final order of the United States Bankruptcy Court for the Middle District of North Carolina, confirming a plan of reorganization under Section 1129(b) of the Bankruptcy Code, which was entered on March 29, 1986. Pension Fund also appeals from earlier interlocutory orders, decisions and findings of the bankruptcy court regarding the proposed plan, classification under the plan, the disclosure statement, and discovery.

Pension Fund then filed an emergency motion to set a hearing date on May 28, 1986. On June 10, 1986, the reorganized debtor Mason and Dixon Lines, Inc., filed a motion to dismiss appeal with supporting brief, although it had not been named as an appellee in this action. The named appellees, Central Transport, Inc., and George E. Gilbertson, Trustee, followed with their joint motion to dismiss appeal on June 11, 1986, and their motion for stay of briefing schedule. Pension Fund responded to this joint motion for stay of briefing schedule on June 17, 1986. The Appellant also

moved for a briefing cut-off date, and renewed its emergency motion for hearing.

The court set June 30, 1986, as the hearing date, and on June 26, 1986, Appellees Central Transport, Inc., and George E. Gilbertson filed, pursuant to court direction, their brief in response to the appeal, as well as a supplemental brief in support of their dismissal motion. The following corporations and individuals were represented at the June 30, 1986, hearing: Central States Pension Fund, Central Transport, Inc., George E. Gilbertson, Trustee in Bankruptcy, and the Unsecured Creditors Committee. Currently before the court is the appeal and the motions for dismissal of the appeal. Upon reviewing the documents submitted in this appeal, the record below and the oral arguments of June 30, 1986, the court will dismiss the appeal as moot.

## STATEMENT OF FACTS

Mason and Dixon Lines, the debtor, is a common carrier in the trucking industry with its principal place of business in Kingsport, Tennessee. Mason and Dixon Tank Lines (M/D Tank Lines) is a wholly-owned subsidiary of Mason/Dixon. On November 29, 1983, Central Transport, Inc., and its affiliate company, entered into an agreement to acquire Mason/Dixon and its related real estate holding company.

Mason/Dixon had experienced losses, as had other companies in the trucking industry, but after some improvement in 1983 it experienced substantial losses in the first quarter of 1984, more than the operating losses of the entire previous year. On March 29, 1984, Mason/Dixon filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Mason/Dixon operated as a debtor-in-possession until December 6, 1984, when the United States Bankruptcy Court for the Middle District of North Carolina appointed George E. Gilbertson as the operating trustee for Mason/Dixon.

On November 12, 1985, after notice and hearing, the bankruptcy court entered its order approving the amended joint disclosure statement submitted by Central Transport and the Trustee. Several plans of reorganization for Mason/Dixon were proposed throughout the bankruptcy proceedings, the last ones submitted jointly by Central Transport and the Trustee. On December 30, 1985, the bankruptcy court declined to confirm the plan of reorganization submitted by Appellees, and suggested that it be modified in certain respects. On January 26, 1986, Central Transport and the Trustee filed their proposed restated joint plan of reorganization, which was modified by an amendment filed February 5, 1986. Pursuant to the bankruptcy court's order, the plan was submitted to creditors for voting, a date was set by which objections had to be filed, and notice was provided of the March 18, 1986, hearing on confirmation of the restated joint plan. On March 18, 1986, the parties still objecting to confirmation were the Teamsters Joint Council No. 83 of Virginia Pension Funds (who did not appear at the confirmation hearing), and the Appellant Central States Pension Fund.

The Appellant Central States Pension Fund is a multi-employer pension fund covered by Employee Retirement Income Security Act (ERISA) and the Multi-Employer Pension Plan Amentments Act of 1980 (MEPPA), which amended ERISA in respect to those organizations. The MEPPA amendments provide that, if an employer withdraws from a multi-employer fund (or pooled trust) the withdrawing employer must pay his fair share of the unfunded vested benefits liability still remaining in the fund when he withdraws. These are known as the "withdrawal liability" enactments. Withdrawal liability may be triggered also by a reduction in the level of contributions by an employer. According to the Pension Benefit Guaranty Corporation, which was directed by Congress in 1978 to conduct a study about this matter, one of the "triggering devices" that should be used to permit an assessment of withdrawal liability against such an employer is a cessation of an obligation to contribute. The cessation of an obligation to contribute can arise when the employer bargains out

of making contributions, or a union waives interest in this contribution, or a local union which has been a bargaining agent for employees is decertified.

In this case a bargaining unit of Mason/Dixon Tank Lines decertified a five-man local union as its bargaining agent. Apparently Central States Pension Fund used this occurrence as the basis for assessment of withdrawal liability, but it based its computations on the overall impact of a drop in contributions by both Mason/Dixon Tank Lines and its parent company Mason/Dixon, resulting from the permanent reduction of 1,100 jobs with those companies during 1984. The validity of these claims has never been determined, but the bankruptcy court did allow the pension funds' claims for the purpose of voting on the reorganization plan, and participating in it as Class 7 unsecured creditors.

Under the reorganization plan the unsecured creditors are divided into two classes: Class 6, which is composed of all non-pension plan unsecured creditors, and Class 7, which is composed of all the pension plan unsecured creditors. In addition to Central States' withdrawal claims, the claims of five other pension funds are included in Class 7. According to the reorganization plan, Class 6 is to receive "Series 1" preferred stock in exchange for its unsecured debt, and Class 7 is to receive "Series 2" preferred stock. The only difference between this stock is that Series 1 stock is immediately marketable pursuant to an offer by the R–100 Corporation to purchase the stock for ten per cent (10%) of the face value of the claim, and the Series 2 stock cannot participate in the purchase offer. The Series 2 stock will mature in twenty years at which time, according to the bankruptcy court's calculations, its value will be equivalent to the current ten per cent (10%) sale value of the Series 1 stock. R–100 Corporation is not a party to this appeal, and is independent from any of the appellee companies.

By the terms of the order, the preferred stock will be issued to Classes 6 and 7 on July 10, 1986. July 7, 1986, is the deadline for notifying the Trustee of the election to participate in the offer to purchase. The imminence of these deadlines is the reason for Appellant's request and the court's granting of an expedited hearing and review of the appeal.

Appellant's objections to this classification, and to other aspects of the bankruptcy proceedings, were considered by the bankruptcy court at the March 18, 1986, hearing to determine whether the restated joint plan complied with the requirements of 11 U.S.C. § 1129(a), and were considered also at the March 27, 1986, confirmation hearing.

At the close of the March 27, 1986, confirmation hearing, Central States Pension Fund orally moved for a stay of the impending order confirming the restated joint plan. The bankruptcy court granted this request upon the condition that the pension fund post a $5,000,000.00 bond no later than April 8, 1986, which amount was subsequently enlarged to $7,000,000.00. Central States Pension Fund did not post the bond, and the conditional stay of the order confirming the restated joint plan did not become effective. Rather, the plan became effective on April 9, 1986, and since that time has been substantially enacted.

## DISCUSSION

In its appellate brief, the Appellant Pension Fund alleges several different errors by the bankruptcy court, including noncompliance with the provisions of Sections 1122, 1123, 1125, 1129(a), and 1129(b) of the Bankruptcy Code, among others, as well as circumvention of the MEPPA. The Appellees have answered these claims in full in their responsive brief filed June 26, 1986, before the hearing and oral arguments of June 30, 1986.

Having reviewed the record and briefs, the court concludes that it would not be likely to find, under the applicable standards of review, either that the bankruptcy court erred in its decision to classify the Pension Fund separately from the other unsecured creditors, and in its confirmation

of the restated joint plan of reorganization, or that the court abused its discretion in approving the amended joint disclosure statement and in denying certain of the Pension Fund's discovery requests. However, it will not be necessary to reach the merits of this appeal, as the court finds that there is no effective relief available to the Appellant, and therefore the appeal is dismissed as moot.

Much of the case law which applies the mootness doctrine in bankruptcy appeals involves the situation in which a third party, who may or may not previously have been involved in the debtor's reorganization or liquidation, has purchased assets from the bankrupt in a good faith transaction that is complete at the time of the appeal. *See In re Abingdon Realty Corp.*, 530 F.2d 588, 589 (4th Cir.1976) ("It is settled law that.the filing of a petition to review an order of a bankruptcy judge ... does not stay the effect or operation of the order unless a supersedeas bond is filed or the order itself provides for a stay."). This doctrine was codified in the former bankruptcy rules by an amendment to Rule 805, and was partially carried over into the new code in reference to conveyances by trustees under subsection 363(m). However, the courts have continued to apply the doctrine to other conveyances also. *Algeran, Inc. v. Advance Ross Corp.*, 759 F.2d 1421, 1423–24 (9th Cir.1985); *Markstein v. Massey Associates, Ltd.*, 763 F.2d 1325, 1327 (11th Cir.1985); *In re Sewanee Land, Coal & Cattle, Inc.*, 735 F.2d 1294, 1296 (11th Cir.1984).

■ The appeal before this court, however, challenges more than just a specific transaction. Appellant's request would require reversal of the bankruptcy court's order confirming the reorganization plan, which would have the effect of invalidating the plan itself. After reviewing the development of the mootness doctrine's application in such appeals, the court concludes that the appropriate question to be answered is whether effective judicial relief is available to the appellant pension fund. *See Matter of Sun Country Development,*

*Inc.*, 764 F.2d 406, 407 n. 1 (5th Cir.1985), *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 464 (6th Cir.1982); *In re Information Dialogues, Inc.*, 662 F.2d 475, 476 (8th Cir.1981); *In re Matter of King Resources Co.*, 651 F.2d 1326, 1332 (10th Cir.1980). All parties seemed to agree at the hearing that this is the correct standard, although naturally they differed as to its application.

■ Upon reviewing the extensive briefs submitted by the parties in support of and opposition to both the motions to dismiss and the appeal itself, as well as reviewing relevant parts of the record below, and after hearing the parties' oral arguments on June 30, 1986, the court finds that this is not an appeal in which effective judicial relief may be granted. This is the conclusion whether "effective judicial relief" refers to relief in accord with appellant's wishes, *cf. In re Combined Metals-Reduction Co.*, 557 F.2d 179, 194–95 (9th Cir. 1977), or effective relief for all concerned, *see In re Roberts Farms, Inc.*, 652 F.2d 793, 797 (9th Cir.1981).

According to the uncontested allegations of the Appellees, as supported by the bankruptcy court's order of May 29, 1986, finding substantial confirmation, the joint restated reorganization plan has been implemented, from the time of its effective date of April 9, 1986, in the following ways:

a. All issued and outstanding stock of Mason/Dixon was owned as of confirmation by Central Transport, Inc. All this stock has been cancelled.

b. CenTra, Inc., which is not a party to this appeal, has purchased 100,000 shares of Mason/Dixon's newly issued common stock and has paid therefor $1,000,000 in cash.

c. GLS LeasCo, Inc., also not a party to this appeal, has entered upon a loan agreement with Mason/Dixon whereby GLS has extended a line of credit of $12,000,000 to Mason/Dixon and has disbursed $5,715,000 under such line of credit.

d. Mason/Dixon has amended its charter and by-laws to reflect and permit the transactions contemplated by the Plan.

e. Mason/Dixon has paid administrative expenses as provided in the Plan in an amount in excess of $507,000 and has repaid $5,715,000 of superpriority indebtedness owed to GLS LeasCo.

f. Mason/Dixon has issued checks totalling in excess of $620,000 for priority wage claims (net of taxes) and has distributed some such checks and, as to the remainder, is awaiting confirmation of the accuracy thereof from counsel for the claimants.

g. Mason/Dixon has authorized and directed the issuance of sufficient Class A and Class B Preferred Stock to meet the requirements of the Plan.

h. The Bankruptcy Court entered its First Order in Aid of Consummation of Restated Joint Plan on April 11, 1986.

i. The Trustee relinquished all management authority over Mason/Dixon and management of the reorganized Mason/Dixon has been assumed by the officers and directors of Mason/Dixon identified in the Plan.

At the June 30, 1986, hearing, the Appellants conceded that a reversal of the confirmation order would render the reorganization plan invalid, thus challenging the basis of all these transactions. Appellant acknowledges that a reorganization plan is formed by the voluntary participation of the relevant parties. However, Appellant contended that it would not be difficult for the parties to agree to a modification which would provide the change being sought by the Pension Fund. In essence, Appellant wishes to return all parties to the negotiation stage and cause a reclassification of the Pension Fund(s) into the same category as the other unsecured creditors, thus allowing it (them) to participate in the R–100 stock purchase offer. Appellant holder of the Series 2 preferred stock argues that, in this way, it could receive presently the same ten per cent (10%) of its claim as can the Class 6 holders of Series 1 preferred stock, instead of having to wait for twenty years of the uncertain future before the Series 2 stock matures.

The bankruptcy court calculated that the Series 2 stock's mature value will be the equivalent of the Series 1 stock's current ten per cent (10%) sale value. After hearing the Appellees' oral presentation, this court has reason to doubt that the Appellant could receive that ten per cent (10%) sale value under a third new reorganization plan. First, it is not certain that all the necessary parties would agree to the changes proposed by the Appellant, and that the debtor could remain a viable business during this new negotiation period. It *is* clear that if Mason/Dixon were to be liquidated Appellant would receive nothing for its claims. Second, it appears that the ten per cent (10%) of claims stock purchase calculation was based upon the difference between the total amount of Class 6 claims and the funds available for that purchase. If the total claims of the Class 7 pension fund were added to that calculation, then all of the unsecured creditors in Class 6 and Class 7 would receive much less than ten per cent (10%) of their claim. This change could well be unpalatable to the Class 6 creditors, whose acceptance of the reorganization plan was at least partially based upon the stock transactions as currently anticipated. Further, it is unclear whether the independent R–100 Corporation would be amenable to changes in the timing of this stock purchase transaction and the amount of stock available for purchase.

The court concludes that, in this absence of effective availability of the relief sought by Appellants, "reversal of the order confirming the plan of arrangement, which would knock the props out from under the authorization for every transaction that has taken place, would do nothing other

than create an unmanageable, uncontrollable situation for the bankruptcy court." *In re Roberts Farms, Inc.,* 652 F.2d at 797.

 Further, the court would observe that the equities of this appeal support a dismissal under the mootness doctrine, because of Appellant's failure to post the bond set for stay by the bankruptcy court. Initially, the court notes that it is not addressing the issue of whether an appellant from a bankruptcy court order must post a bond and/or obtain a stay from the *appellate court* in order to preserve its appeal. This is a case in which the bankruptcy court decided to grant a stay of its confirmation order contingent upon Appellant posting a $7,000,000.00 bond. This court is convinced that the bankruptcy court was justified in requiring such a bond, in view of the uncontested arguments presented by Appellees as to the debtor's need for immediate reorganization if it was to avoid liquidation. The Appellant chose not to post the bond and further chose not to pursue an immediate appeal of the bond's size, if indeed this was the deterring factor. (It appears that it was less a matter of Appellant being unable to post the bond, than of Appellant being unwilling to take the risk that this bond represents.) Instead, Appellant filed this appeal and then made subsequent requests for an emergency hearing and determination of the matter by this court, at the ninth hour and well after the reorganization was underway.

The court fails to see why it is preferable to reverse the plan and force new negotiations at *this* stage, when the plan has been acted upon so substantially and relied upon by so many parties. This is particularly so since several of the parties who would be affected by a reversal are not before the court as appellees in this action.

For the foregoing reasons, the court will grant Appellees' motion to dismiss this appeal. An order in accordance with this memorandum opinion shall be filed contemporaneously herewith.