
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

In re:

AKI  T. OYA,

                    Debtor.

_____

AKI  T. OYA,

                    Appellant,

v.

WELLS FARGO, N.A., AS TRUSTEE FOR
STRUCTURED ASSET MORTGAGE
INVESTMENTS II INC. STRUCTURED
ASSET MORTGAGE INVESTMENTS II
TRUST 2007-AR4, MORTGAGE PASS-
THROUGH CERTIFICATES SERIES 2007-
AR4,

                    Appellee.

_____

BAP No. SC-19-1095-BKuL

Bk. No. 18-03598-CL

**MEMORANDUM**\*

Argued and Submitted on September 26, 2019
at Pasadena, California

---

\* This disposition is not appropriate for publication.  Although it may be cited for whatever persuasive value it may have, _see_ Fed. R. App. P. 32.1, it has no precedential value, _see_ 9th Cir. BAP Rule 8024-1.

Filed – October 18, 2019

Appeal from the United States Bankruptcy Court
for the Southern District of California

Honorable Christopher B. Latham, Bankruptcy Judge, Presiding

_____

Appearances:     Michael G. Doan of Doan Law Firm argued for appellant
Aki T. Oya; Jonathan Fink of Wright Finlay & Zak, LLP
argued for appellee Wells Fargo, N.A., as Trustee for
Structured Asset Mortgage Investments II Inc. Structured
Asset Mortgage Investments II Trust 2007-AR4, Mortgage
Pass-Through Certificates Series 2007-AR4.

_____

Before:     BRAND, KURTZ and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Appellant Aki Oya appeals an order granting appellee retroactive
annulment of the automatic stay under § 362(d)(1)[1] and in rem stay relief
under § 362(d)(4).[2] Because appellee could seek retroactive relief despite
having notice of the bankruptcy filing prior to its foreclosure sale, and

_____

[1] Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal
Rules of Bankruptcy Procedure.

[2] Aki does not challenge the bankruptcy court's ruling granting in rem relief
under § 362(d)(4).

2

because the bankruptcy court properly weighed the required factors concerning such relief, we AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A.    **Prepetition events**

The facts are largely undisputed. Aki and her husband, Souichi Oya,[3] acquired their residence in 2002 ("Property"). In 2007, the Oyas executed a promissory note and deed of trust for a $600,000 loan, for which the Property served as security. Appellee, Wells Fargo, N.A., as Trustee for Structured Asset Mortgage Investments II Inc. Structured Asset Mortgage Investments II Trust 2007-AR4, Mortgage Pass-Through Certificates Series 2007-AR4 ("Wells Fargo"), acquired the note and deed of trust in 2013.

The Oyas defaulted on the loan in 2014. They have not made a payment since then. In response to at least two scheduled foreclosure sales for the Property, the Oyas filed a series of five, alternating individual chapter 13 bankruptcy cases between September 2016 and April 2018. No case was successful; all were dismissed for failure to file the required documents or a plan. At least two of the five cases were filed the day before a scheduled foreclosure sale.

Following these five unsuccessful bankruptcy cases, another foreclosure sale was set for Monday, June 18, 2018. Just prior to this, on June 13, 2018, Aki

---

[3] We refer to Ms. Oya as "Aki" and Mr. Oya as "Souichi" to avoid any confusion. No disrespect is intended.

called the loan's servicer, Select Portfolio Servicing, Inc. ("SPS"), to inquire about the loan's status and was told that the sale was scheduled for June 18. Aki called SPS on June 14, 2018, and was again told that the sale was scheduled for June 18. In response, Aki requested postponement of the sale due to Souichi's recent injury and asked that the person assigned to her case contact her regarding postponement.

## B.    Postpetition events

On Friday, June 15, 2018, Aki filed this chapter 13 bankruptcy case — the sixth case filed between the Oyas in less than two years and Aki's fourth case.[4] It too was a "bare-bones" filing, lacking any schedules, a statement of financial affairs, or a plan.

On Monday, June 18, 2018, approximately two hours before the scheduled foreclosure sale, an SPS representative called Aki as she requested. Aki told the SPS representative that she had filed a bankruptcy case on June 15, that Souichi was having surgery, and that she would call back later with an update. During the call, Aki did not provide SPS with any bankruptcy court filing information or a case number. At 11:22 a.m., without any mention of the bankruptcy filing, the foreclosure trustee proceeded with the sale and sold the Property to Magnum Property Investments, LLC

---

[4] Aki's and Souichi's "tag team" bankruptcy filings were filed at such times to avoid either of them invoking § 362(c)(4) and the loss of any automatic stay.

("Magnum") for $915,300.[5] Wells Fargo immediately rescinded the sale the next day on June 19, 2018, and returned the purchase funds to Magnum the following day.

## 1. Magnum's Motion for Relief/Annulment of Stay

Refusing to accept that the sale had been rescinded, Magnum moved to annul the stay. The bankruptcy court granted stay annulment, finding that it was warranted under *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 25 (9th Cir. BAP 2003). Specifically, the court found that the Oyas were serial bankruptcy filers, having filed numerous cases that interfered with the foreclosure sale of the Property, and that this "bare-bones" filing was simply another bad-faith case filed as part of a scheme to hinder or delay the sale. Even though rescinded, the court deemed the June 18 sale valid and ruled that any postpetition acts taken by Magnum in purchasing the Property did not violate the stay.

Prior to entry of the Magnum order, the bankruptcy court dismissed Aki's bankruptcy case on July 3, 2018, for failure to file the required schedules, statement of financial affairs, or plan. Her attempts to reinstate the case failed.

---

[5] Wells Fargo disputed that it received the BNC notice sent to "WFFC.com" on Saturday, June 16, 2018, and argued that the oral notice SPS received from Aki about her bankruptcy filing during the June 18, 2018 phone call was insufficient. While Wells Fargo still disputes the BNC notice, it no longer appears to argue that the oral notice to SPS prior to the sale was insufficient.

### 2. Aki's motion to reconsider

Aki moved for reconsideration of the Magnum order ("Motion to Reconsider"). She argued that the order should be reversed because she had significant equity in the Property. At the same time, the Oyas filed a separate civil action against Wells Fargo, SPS and Magnum for willful violation of the automatic stay and unfair debt collection practices in the U.S. District Court for the Southern District of California ("Civil Action").[6]

After a hearing, the bankruptcy court entered an order granting in part and denying in part Aki's Motion to Reconsider. The court denied the motion to the extent that the Magnum order annulled the stay as to Magnum, and it granted the motion to the extent that the Magnum order retroactively validated the June 18 foreclosure sale. This ruling, however, was without prejudice to Wells Fargo bringing its own stay annulment motion and

---

[6] The Civil Action was dismissed with prejudice on July 17, 2019. With respect to Aki's claim for stay-violation damages, the district court held:

> Here, the bankruptcy court granted Defendants' motion for stay relief. (Doc. No. 45-5.) Given that the bankruptcy court has the power to grant retroactive relief from a stay, and the bankruptcy court granted such relief in this case, no stay violation occurred. *See In re Schwartz*, 954 F.2d 569, 573 (9th Cir. 1992) ("If a creditor obtains retroactive relief under section 362(d), there is no violation of the automatic stay. . . ."). Accordingly, Plaintiffs' argument that Defendants violated 11 U.S.C. § 362 and 11 U.S.C. § 1301 is without merit.

Aki moved for reconsideration of the dismissal order, which the district court denied on September 19, 2019. Aki has appealed both orders to the Ninth Circuit Court of Appeals. *See* Ninth Cir. Case No. 19-56152.

requesting sale validation should annulment be granted.

### 3. Wells Fargo's motion for relief from stay

Taking the cue from the bankruptcy court, Wells Fargo moved for retroactive annulment of the automatic stay under § 362(d)(1) ("Motion to Annul"). Wells Fargo maintained that it was seeking annulment of the stay solely to protect it and SPS from the stay violation claim asserted by the Oyas in the Civil Action; it was not seeking to validate the rescinded sale. Wells Fargo argued that the *Fjeldsted* factors weighed in favor of granting annulment.

In opposition, Aki argued that the Motion to Annul was Wells Fargo's attempt to obtain forgiveness and immunity from its willful stay violation, and that retroactive annulment of the stay was not proper under those circumstances. Aki maintained that Wells Fargo's stay violation was willful, and not merely technical, because it had notice of her bankruptcy filing prior to the June 18 foreclosure sale yet proceeded with the sale anyway. If there was any doubt as to notice, Aki requested that an evidentiary hearing be held after discovery was complete. Even if Wells Fargo obtained annulment of the stay, argued Aki, that did not eliminate its liability for any stay-violation damages under § 362(k) at issue in the Civil Action. Aki also argued that Wells Fargo's claim for relief was barred by laches and unclean hands.

Wells Fargo maintained that its actions were, at most, a technical violation of the automatic stay and not a willful one. Wells Fargo further

7

disputed Aki's ability to claim any stay-violation damages if retroactive annulment was granted. To annul the stay, argued Wells Fargo, means that no stay violation occurred. And without a stay violation, there can be no damages under § 362(k).

After a hearing, the bankruptcy court issued an order granting the Motion to Annul. Without deciding the issue of notice, the court reasoned that, even if Wells Fargo had notice of Aki's bankruptcy filing prior to the foreclosure sale, Aki's inequitable conduct significantly outweighed it. It further found that all but two of the twelve *Fjeldsted* factors weighed "strongly" in favor of annulment. The court rejected Aki's arguments that the doctrines of laches and unclean hands barred Wells Fargo's claim for relief; Wells Fargo's five-month delay in seeking stay relief was not unreasonable or inexcusable, and it was not clear to the court whether Wells Fargo's actions were willful to preclude relief on the basis of unclean hands. In any event, the court believed that Aki's inequitable conduct precluded her from avoiding stay annulment. This timely appeal followed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(G). *Aheong v. Mellon Mortg. Co. (In re Aheong)*, 276 B.R. 233, 242-43 & n.8 (9th Cir. BAP 2002) (bankruptcy court retains jurisdiction to review motions to annul the automatic stay even after a bankruptcy case is dismissed or closed). We have jurisdiction under 28 U.S.C. § 158.

**III. ISSUE**

Did the bankruptcy court abuse its discretion in granting the Motion to Annul?

**IV. STANDARD OF REVIEW**

A bankruptcy court's decision to retroactively annul the automatic stay is reviewed for an abuse of discretion. *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*, 129 F.3d 1052, 1054 (9th Cir. 1997). The bankruptcy court abuses its discretion if it applies the wrong legal rule or if its findings are illogical, implausible or without support in the record. *United States v. Hinkson*, 585 F.3d, 1247, 1262 (9th Cir. 2009) (en banc).

**V. DISCUSSION**

**A.**   **The bankruptcy court did not abuse its discretion in granting the Motion to Annul.**

**1.**   **Governing law for annulling the automatic stay**

Under § 362(a), the filing of Aki's bankruptcy petition operated as a stay of "any act to obtain possession of property of the estate" and "any act to create, perfect, or enforce any lien against property of the estate." § 362(a)(3) & (4). Here, the foreclosure sale, conducted after Aki filed her bankruptcy case, constituted an act to obtain possession of and to enforce a lien against property of the estate in violation of § 362. Actions taken in violation of the stay are void. *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 572 (9th Cir. 1992).

9

However, § 362(d) "gives the bankruptcy court wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay." *Id.*[7] Retroactive relief validates acts which violate the automatic stay and would otherwise be void. *Id.* at 573; *Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 172 (9th Cir. BAP 2005); *see also E. Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998) (retroactive annulment of the stay validates actions taken in contravention of such stay, whereas termination, modification, and conditioning generally take effect only as of the date such relief is granted). Thus, the Code accounts for the fact that it may be inappropriate in certain circumstances to permit a debtor to take advantage of the automatic stay. *DelConte v. Torrez (In re DelConte)*, BAP No. 06-1302-SDK, 2007 WL 7535060, at *4 (9th Cir. BAP Aug. 14, 2007) (citing *Sherman v. SEC (In re Sherman)*, 441 F.3d 794, 815 (9th Cir. 2006)), *opinion amended and superseded*, 491 F.3d 948 (9th Cir. 2007).

In deciding whether "cause" exists to annul the stay under § 362(d)(1), the bankruptcy court is required to examine the circumstances of the particular case and balance the equities of the creditor's position in comparison to that of the debtor's. *Souang v. Fularon (In re Fularon)*, BAP No. 10-1428-JuHPa, 2011 WL 4485202, at *3 (9th Cir. BAP July 11, 2011) (citing *In*

---

[7] Section 362(d) provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay[.]

10

*re Nat'l Envtl. Waste Corp.*, 129 F.3d at 1055). Under this approach, the bankruptcy court considers "(1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." *In re Nat'l Envtl. Waste Corp.*,129 F.3d at 1055.

In *Fjeldsted*, we identified twelve additional factors that can be relevant in deciding whether retroactive annulment of the stay is justified:

1. Number of filings;

2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;

3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;

4. The debtor's overall good faith (totality of circumstances test);

5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;

6. Whether the debtor has complied, and is otherwise complying, with the Code and Rules;

7. The relative ease of restoring parties to the status quo ante;

8. The costs of annulment to debtors and creditors;

9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;

10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;

11. Whether annulment of the stay will cause irreparable injury to the debtor;

12. Whether stay relief will promote judicial economy or other efficiencies.

293 B.R. at 25. These factors, however, "are merely a framework for analysis and not a scorecard," and thus "[i]n any given case, one factor may so outweigh the others as to be dispositive." *Id.* The debtor bears the ultimate burden of proving that the request for retroactive relief from the stay should be denied. *In re Fularon*, 2011 WL 4485202, at *5 (citing *In re Nat'l Envtl. Waste Corp.*, 191 B.R. 832, 836 (Bankr. C.D. Cal. 1996)), *aff'd*, 129 F.3d 1052 (9th Cir. 1997) (debtor has the burden of proof under § 362(g)(2) to demonstrate that cause does not exist to annul the stay).

**2.  Wells Fargo's knowledge of the bankruptcy filing prior to the foreclosure sale did not preclude retroactive annulment of the stay**.

For its analysis under the two-factor test in *National Environmental Waste Corporation*, 129 F.3d at 1055, the bankruptcy court assumed that Wells Fargo had notice of Aki's bankruptcy filing prior to the foreclosure sale but found that it was "significantly outweighed" by Aki's inequitable conduct. Facts important to the court's decision were Aki's intent to delay Wells Fargo's

foreclosure efforts and her bad-faith filing scheme, and Wells Fargo's quick rescission of the sale. The court also found that *Fjeldsted* factor 5 – whether the creditor knew of the stay but nonetheless took action — weighed against annulment.

Aki argues that Wells Fargo was not entitled to retroactive stay relief because it failed to establish "cause." Her argument is two-fold: (1) Wells Fargo was seeking only to escape liability under § 362(k),[8] as opposed to validating the void foreclosure sale, which did not provide cause; and (2) a creditor who willfully violates the automatic stay can never obtain retroactive annulment for the purpose of escaping liability under § 362(k).

The bankruptcy court found that even if Wells Fargo had notice of Aki's bankruptcy filing prior to the foreclosure sale, it was not clear whether its stay violation was "willful". While it is ultimately not relevant to our analysis, the court's finding was erroneous. If Wells Fargo had notice of the bankruptcy filing, which it now appears to concede it had via Aki's oral notice to SPS, but proceeded with the foreclosure sale anyway, that was a willful violation of the automatic stay. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003) (a stay violation is "willful" if the party knew of the stay and the party's actions which violated the stay were intentional);

---

[8] Section 362(k)(1) provides, in relevant part, that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

*Yellow Express, LLC v. Dingley (In re Dingley)*, 514 B.R. 591, 596 (9th Cir. BAP 2014); *Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 589 (9th Cir. BAP 1995) (knowledge of the bankruptcy filing is legal equivalent of knowledge of the automatic stay). In any case, Wells Fargo was not precluded from seeking or obtaining retroactive stay annulment despite any willful stay violation.

The Ninth Circuit Court of Appeals has held that the bankruptcy court's power to annul the stay under § 362(d) exists whether the creditor acts at a time when he is unaware of the stay, "or proceeds with a foreclosure sale when he has actual knowledge of the stay." *Glaser v. Dowell (In re Glaser)*, 56 F.3d 71 (9th Cir. May 19, 1995) (table) (citing *Algeran, Inc. v. Advance Ross Corp.*, 759 F.2d 1421, 1422-25 (9th Cir. 1985)). In *Glaser*, the debtor provided evidence that the creditor knew of his bankruptcy filing prior to the foreclosure sale. However, the Ninth Circuit ruled that notice did not limit the court's discretion to validate the creditor's actions. *Id.* Likewise, in *National Environmental Waste Corporation*, the Ninth Circuit rejected the debtor's argument that the creditor's knowledge of the bankruptcy filing and its own innocence of egregious conduct should be dispositive in a motion to annul. 129 F.3d at 1055. "[W]e have never held these two factors to be dispositive; instead, we have engaged in a case by case analysis." *Id.*

This Panel has also affirmed bankruptcy court decisions retroactively annulling the automatic stay, even when the creditor had (or allegedly had) knowledge of the debtor's bankruptcy filing prior to acting. The creditor's

14

knowledge is just one factor to consider in weighing the equities of the case. *See Staton v. United States (In re Staton)*, BAP Nos. 18-1045 & 18-1046-TaBKu, 2019 WL 994026, at *4 (9th Cir. BAP Feb. 27, 2019) (debtor failed to argue why creditor's knowledge of the bankruptcy filing prior to the foreclosure sale should outweigh the other factors and be dispositive); *Bray v. U.S. Bank, N.A. (In re Bray)*, BAP No. 17-1373-SKuF, 2018 WL 3748503, at *6 (9th Cir. BAP Aug. 7, 2018) (bankruptcy court did not err in determining that debtor's bad-faith conduct outweighed creditor's alleged notice of the bankruptcy filing prior to the foreclosure sale; a creditor's awareness of the bankruptcy is "not dispositive"); *Ceralde v. The Bank of N.Y. Mellon (In re Ceralde)*, BAP No. 12-1547-CoDKi, 2013 WL 4007861, at *5-6 (9th Cir. BAP Aug. 6, 2013) (bankruptcy court did not err in determining that the debtor's egregious conduct outweighed the creditor's admitted knowledge of the bankruptcy filing prior to the foreclosure sale); *Williams v. Levi (In re Williams)*, 323 B.R. 691, 701 (9th Cir. BAP 2005)("*Williams I*") (affirming the bankruptcy court's annulment of the automatic stay, even though purchaser at foreclosure sale had notice of the bankruptcy filing, based on debtor's inequitable conduct), *abrogated on other grounds by Eden Place, LLC v. Perl (In re Perl)*, 811 F.3d 1120 (9th Cir. 2016).

In another noteworthy case, *In re Fularon*, the bankruptcy court denied retroactive stay relief on the sole basis that the foreclosure trustee had notice of the debtor's bankruptcy filing prior to the sale of the debtor's real property.

2011 WL 4485202, at *4. There, the successful bidder at the sale claimed he lacked notice of the bankruptcy filing, which the debtor filed just five minutes prior to the sale, but there were allegations that the foreclosing trustee had notice. The bankruptcy court considered only notice and failed to weigh all relevant factors for stay annulment. The Panel reversed, noting that balancing the equities requires the court to reach an equitable conclusion, rather than a factual or legal one, and that "there is no per se rule that notice of the bankruptcy case precludes retroactive relief from stay." *Id.*

While Aki appears to agree that the automatic stay can be retroactively annulled to validate an otherwise void foreclosure sale conducted with the creditor's knowledge of the bankruptcy filing, she maintains that such relief is not available when the creditor seeks only to avoid liability under § 362(k). This case is a procedural anomaly. Few, if any, creditors would seek absolution from a stay violation without also seeking validation of a void foreclosure sale or some other transaction. However, relief from § 362(k) liability is not all that Wells Fargo requested; it also sought prospective stay relief under § 362(d)(4). In any case, we are not persuaded by Aki's argument.

Neither the Ninth Circuit Court of Appeals nor this Panel has expressly ruled that a creditor cannot obtain retroactive stay relief to avoid liability under § 362(k). Although in the above cases the movant was seeking to validate an otherwise void foreclosure sale, it defies logic to say that a bankruptcy court can validate by annulment the sale but not the creditor's act

16

of commencing the sale that subjected it to § 362(k) liability. If a void sale can be blessed, so can the creditor's actions surrounding the sale. In fact, that is exactly what retroactive annulment does.

Aki's argument is also contrary to this circuit's mandate, that bankruptcy courts engage in a weighing of equitable factors, including the creditor's knowledge, to decide when retroactive annulment of the stay is justified. If a creditor's knowledge of the bankruptcy filing was an absolute bar to retroactive stay relief, there would be no need for the court to consider the remaining factors. On the flip side of this, we would be hard-pressed to say that a bankruptcy court abused its discretion in denying retroactive stay relief if it found that the creditor's knowledge outweighed the other factors. *See In re Fjeldsted*, 293 B.R. at 25 (one factor may so outweigh the others as to be dispositive). The problem in *Fularon* was that the bankruptcy court considered notice only to the exclusion of all other factors. 2011 WL 4485202, at *4. In summary, a creditor's knowledge of the bankruptcy is just one of the many factors the court must consider.[9]

---

[9] Aki argues that the bankruptcy court erred by not conducting an evidentiary hearing regarding Wells Fargo's notice. No such hearing was necessary. The bankruptcy court assumed Wells Fargo knew about the bankruptcy filing prior to the foreclosure sale for purposes of the Motion to Annul. Further, although Aki had requested (in her brief) an evidentiary hearing if notice was in dispute, her counsel never complained about the lack of one at the hearing on the Motion to Annul, even after the court announced that it was taking the matter under advisement and would issue a decision. Instead, Aki's counsel requested that the court provide findings of fact and conclusions of law for her probable appeal without voicing any objection to the lack of an

(continued...)

The only case, at least from this circuit, that could have supported Aki's argument is *Williams I*, 323 B.R. at 702. However, that case was ultimately overruled by the Ninth Circuit Court of Appeals in 2010. In *Williams I*, the Panel affirmed the bankruptcy court's decision to annul the stay but remanded for the court to decide if the debtor was entitled to stay-violation damages under former § 362(h), now § 362(k). The Panel stated that case law had not yet definitively addressed whether an action taken in violation of the stay, validated by annulment after the fact, may still serve as the basis for an award of money damages if the debtor has suffered an injury. *Id.* "[I]t is far from clear that annulment of the stay should preclude damages for violation of the stay before the annulment:  the principle that one may be held in contempt notwithstanding the reversal of the order violated, *Worden v. Searls*, 121 U.S. 14 (1887); *U.S. v. United Mine Workers of Am.*, 330 U.S. 258, 294 (1947), or even its unconstitutionality, *Walker v. City of Birmingham*, 388 U.S. 307 (1967), seems an appropriate analogy." *Id*.[10]

On remand, the bankruptcy court ruled that stay-violation damages are precluded when the stay is retroactively annulled. The district court affirmed,

<hr>

[9](...continued)
evidentiary hearing. Thus, Aki's argument regarding an evidentiary hearing has been abandoned in any event.

[10] Although *Williams I* was initially affirmed by the Ninth Circuit Court of Appeals, 204 F. App'x 582 (9th Cir. 2006), the unpublished opinion did not address the Panel's discussion of whether stay violations may serve as a basis for damages even when validated by retroactive annulment. *Id.*

ruling that once a stay is retroactively annulled, the opportunity for stay-violation damages is eliminated. *See Williams v. Franklin Towers Homeowners Ass'n, Inc. (In re Williams)*, No. 07-2879, 2008 WL 11334031, at *5 (C.D. Cal. Jan. 16, 2008)("*Williams II*"). In its well-reasoned decision, the district court observed:

> Generally, retroactive annulment operates to negate the existence of the stay from the effective date of the annulment, validating the prior action. . . . Damages for violations of a stay may be (and likely are) available when a court merely modifies or terminates a stay, without validating any prior violations or negating the existence of the stay from the date of the violation. Inclusion of these various statutory alternatives strongly suggests that Congress intended that an annulment would operate in some way different from a mere modification or termination of an automatic stay. An annulment's distinguishing characteristic, therefore, is that it operates to erase the stay from the date of any violation, validating prior impermissible actions. To allow damages even when a stay is annulled would render it identical to a termination or modification of a stay, and its inclusion in section 362(d) would then be redundant.

*Id.* at *4.[11]

---

[11] The district court disagreed with the Panel's earlier suggestion that the availability of damages when the stay is annulled is analogous to the validity of contempt sanctions even where the underlying court order is later invalidated. *Williams II*, 2008 WL 11334031, at *5. It found the Panel's analogy inapt, because the cases on which the Panel relied involved criminal contempt, not proceedings for civil contempt and compensatory damages. *Id.* Unlike criminal contempt, noted the district court, a civil contempt judgment falls with the decision invalidating the underlying injunction. *Id.* (citing *Scott & Fetzer Co. v. Dile*, 643 F.2d 670, 675 (9th Cir. 1981)). Because

(continued...)

The Ninth Circuit Court of Appeals affirmed, ruling that the "bankruptcy court correctly denied [the debtor's] request for damages for violation of the automatic stay because the stay was retroactively annulled." *Williams v. Franklin Towers Homeowners Ass'n, Inc. (In re Williams)*, No. 08-55235, 386 F. App'x. 608 (9th Cir. July 6, 2010)("*Williams III*"). *See also In re Schwartz*, 954 F.2d at 573 (retroactive stay annulment under § 362(d) disposes of an underlying stay violation). Therefore, Aki's reliance on *Williams I,* as well as this Panel's reliance on *Williams I* after 2010, for the proposition that stay annulment does not necessarily preclude stay-violation damages under § 362(k) is misplaced. *See Wallace v. Carcredit Auto Grp., Inc. (In re Wallace)*, BAP No. 13-1414-KuPaTa, 2014 WL 1244792, at *6 (9th Cir. BAP Mar. 26, 2014) (relying on *Williams I*, 323 B.R. at 702, to state, in dicta, that an overtly willful stay violation presumably cannot be cured by stay annulment). Moreover, Aki took the issue of stay-violation damages to the district court, which has ruled against her.

### 3. The bankruptcy court properly weighed the *Fjeldsted* factors.

Alternatively, Aki argues that the *Fjeldsted* factors weighed against annulment. She contests the bankruptcy court's findings of fact, which we review for clear error. The court painstakingly went through each of the twelve *Fjeldsted* factors, finding that only two weighed against annulment —

---

[11](...continued)
stay-violation damages are virtually identical in character to civil compensatory contempt sanctions, reasoned the district court, the Panel's analogy did not apply.

factors 5 and 9. We do not discern any clear error here.

The court found that Aki's and Souichi's repeat filings, without any genuine effort to reorganize their debts, were part of an intentional scheme to hinder and delay the foreclosure of the Property and an abuse of the bankruptcy process. Aki (and Souichi) filed multiple bare-bones bankruptcy petitions, several of which were filed on the eve of a scheduled foreclosure sale. Aki (and Souichi) never filed schedules or statements of financial affairs or plans. And given that all six of the cases were dismissed for failure to file the required documents, Aki (and Souichi) apparently never intended to actually follow through and prosecute a bankruptcy case to conclusion. It is clear, especially given their careful timing, that the petitions were filed simply to get the benefit of the automatic stay. Thus, the court did not err in finding that factors 1, 2, 4 and 6 weighed in favor of annulment.

Likewise, the court did not err in finding that factors 3, 7, 8, 10, 11 and 12 weighed in favor of annulment. The court found that Wells Fargo would suffer prejudice if retroactive annulment was not granted because it would have to face § 362(k) sanctions, and that Aki should not be able to profit from her bad-faith scheme. Further, Aki had already been restored to the status quo ante with Wells Fargo's rescission of the sale, and annulment would now restore Wells Fargo to the pre-foreclosure status quo. The court found that annulment cost nothing to either party. Aki's threat of an appeal was not a cost of granting retroactive relief. And given that she had lived at the

Property for the past five years without making payments, the typical attorney's fees associated with stay motion practice would have no net cost to her. Because Wells Fargo immediately rescinded the sale the next day, the court found that there was no continuing violation of the stay. The court also found that annulment would not cause irreparable injury to Aki. Because her case had been dismissed, no stay was in place to prevent Wells Fargo's foreclosure efforts, no matter the motion's outcome. Finally, the court found that judicial economy and efficiency favored annulling the stay. Resolving the stay violation matter between Aki and Wells Fargo via annulment would expedite a resolution in the Civil Action. In other words, without a stay violation, damages under § 362(k) would be impossible to establish.

### 4. Laches and Unclean Hands

Lastly, Aki argues that the bankruptcy court erred in determining that laches and unclean hands did not preclude Wells Fargo's relief. It appears to us that the doctrines of laches and unclean hands are subsumed within the balancing tests of both *National Environmental Waste Corporation* and *Fjeldsted*. As we have already concluded above, the bankruptcy court did not err in weighing the relevant factors to conclude that Wells Fargo was entitled to retroactive stay relief. While the court found that Wells Fargo's five-month delay in seeking retroactive stay relief weighed against annulment, it also found that Aki was not prejudiced by any purported delay given her five years of living at the Property rent free. Further, even if Wells Fargo had

22

notice of Aki's bankruptcy filing prior to the foreclosure sale giving it unclean hands, her inequitable conduct of living at the Property for five years without making payments and her years-long scheme to avoid foreclosure outweighed it or likely precluded her from asserting that defense. *See Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 814 (1945) (unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.").

## VI. CONCLUSION

The bankruptcy court could grant retroactive annulment of the automatic stay despite Wells Fargo's knowledge of the bankruptcy case prior to the foreclosure sale, and the court did not clearly err in finding that Wells Fargo's knowledge was outweighed by Aki's inequitable conduct under *National Environmental Waste Corporation* and *Fjeldsted*. Accordingly, we AFFIRM.

23